Gregory CURTIS, et al., individually
and on behalf of all others simi-
larly situated, Respondents,

v.

ALTRIA GROUP, INC., Respondent,

Philip Morris, Inc., Appellant.

No. A10–0215.

Supreme Court of Minnesota.

May 30, 2012.

Kay Nord Hunt, Margie R. Bodas, Diane M. Odeen, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN; Martha K. Wivell, Sheller, P.C., Cook, MN; Stephen A. Sheller, Sheller, P.C., Philadelphia, PA, for respondents Gregory Curtis, et al.

George W. Soule, Nathan J. Marcusen, Bowman and Brooke LLP, Minneapolis, MN; Gregory P. Stone, Randall G. Sommer, Munger, Tolles & Olson LLP, Los Angeles, CA; David F. Herr, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for appellant Philip Morris, Inc.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Benjamin Velzen, Assistant Attorney General, St. Paul, MN, for amicus curiae State of Minnesota.

Scott A. Smith, Nilan Johnson Lewis PA, Minneapolis, MN; John H. Beisner, Jessica Davidson Miller, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, D.C.; Robin S. Conrad, National Chamber Litigation Center, Inc., Washington, D.C., for amicus curiae Chamber of Commerce of the United States of America.

Bruce Jones, Faegre & Benson LLP, Minneapolis, MN; Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, VA, for amicus curiae Product Liability Advisory Council, Inc.

Charles A. Bird, Bird, Jacobsen & Stevens, P.C., Rochester, MN; Gary L. Wilson, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, for amicus curiae Minnesota Association for Justice.

Thomas H. Boyd, Kristopher D. Lee, Winthrop & Weinstine, P.A., Minneapolis, MN, for amicus curiae Minnesota Defense Lawyers Association.

Prentiss E. Cox, Minneapolis, MN; William H. Crowder, Vildan A. Teske, Marisa C. Katz, Crowder Teske, PLLP, Minneapolis, MN, for amicus curiae National Association of Consumer Advocates.

## OPINION

DIETZEN, Justice.

Respondents Gregory Curtis, et al., bring this action on behalf of themselves and others similarly situated against appellant Philip Morris, Inc.,[1] and its parent company, Altria Group, Inc.,[2] alleging that Philip Morris's use of the words "light" and "lowered tar and nicotine" to market and sell cigarettes was false and deceptive, and violated Minnesota's consumer protection statutes. Respondents asserted claims under Minn.Stat. § 8.31, subd. 3a (2010), and for common law fraud and unjust enrichment. The district court granted, among other things, respondents' motion to certify the class. Subsequently, Philip Morris moved for partial summary judgment on the grounds that respondents' consumer protection claims asserted under section 8.31, subdivision 3a, are barred by a previous release and that respondents failed to satisfy the public benefit requirement of section 8.31. The court granted summary judgment on the consumer protection claims asserted under section 8.31, subdivision 3a, and then granted Philip Morris's motion for judgment on the pleadings on the remaining claim and dismissed the case. The court of appeals affirmed the district court's certification of the class, but reversed the grant of summary judgment and reinstated respondents' subdivision 3a consumer protection claims. We granted review. Because we conclude that respondents' consumer pro-

---

**1.** Philip Morris, Inc., and Altria Group, Inc., have had other names during the pendency of this case and the thirty-plus years over which the challenged conduct took place. Because the companies' names and identities are not in issue, however, use of these other names would needlessly infect our discussion and analysis with confusion. As a result, we will disregard all previous names and refer to the companies solely as "Philip Morris" and "Altria."

**2.** Altria has been dismissed from the case and takes no part in this appeal.

tection claims asserted under section 8.31, subdivision 3a, were previously released, we reverse.

The relevant material facts are undisputed. During the relevant time period between 1971 and the filing of the Curtis lawsuit, Philip Morris manufactured, marketed, and sold Marlboro Lights cigarettes in Minnesota. The word "lights" appeared on every package of Marlboro Lights sold during this period, as did the words "lowered tar and nicotine."

In 1994, the Minnesota Attorney General (State AG) brought an action (State lawsuit) against Philip Morris and other tobacco companies. The purpose of the suit, as described in the second amended complaint, was "to protect the citizens and the public health" pursuant to the authority of the State AG under the common law, Minn.Stat. §§ 8.01 (2010) and 8.31 (2010), and substantive consumer protection statutes.[3] The second amended complaint alleged, in relevant part, a cause of action for unjust enrichment and violations of several Minnesota consumer protection statutes, namely (1) the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. § 325F.69, subd. 1 (2002); (2) the Minnesota Unlawful Trade Practices Act, Minn.Stat. § 325D.13 (2010); (3) the Minnesota Deceptive Trade Practices Act, Minn.Stat. § 325D.44, subd. 1 (2010); and (4) the Minnesota False Statement in Advertisement Act, Minn.Stat. § 325F.67 (2010). The prayer for relief included requests that the court enter judgment: declaring that Philip Morris and the other defendants engaged in consumer fraud, unlawful and deceptive trade practices, and false advertising in violation of the laws of the State of Minnesota; enjoining defendants from continuing or repeating such conduct;

ordering defendants to disgorge all profits from the sale of cigarettes in Minnesota, and to pay restitution; and awarding damages for past and future harm caused by the defendants' violations of Minnesota law, as well as civil penalties for each separate violation of the substantive consumer protection statutes, pursuant to Minn.Stat. §§ 8.31, subd. 3, and 645.24 (2010).

At the trial of the State lawsuit, the State AG told jurors during the opening statement that they would see and hear evidence that Philip Morris and the other defendants

> intentionally cheated smokers ... by lowering tar and nicotine in cigarettes and implying ... that those cigarettes were safer. The fact is these companies knew that smokers who were moving in droves to lower tar and nicotine cigarettes, thinking they were safer, were obtaining the same tar and subject to virtually the same risks as the higher tar cigarettes

because smokers compensate—i.e., take heavier, deeper draws—on lower tar cigarettes. The State AG also introduced expert opinion testimony at trial that defendants deceived consumers by marketing lowered tar and nicotine cigarettes as healthier even though the tobacco companies knew that, due to compensation, smokers of light cigarettes did not in fact receive lowered tar and nicotine.

Before the case was submitted to the jury, the parties settled the case and executed a settlement agreement and stipulation for entry of consent judgment (Settlement Agreement) to "settle and resolve with finality all claims of the State of Minnesota relating to the subject matter of

---

**3.** Blue Cross and Blue Shield of Minnesota was also a named plaintiff in the State lawsuit.

this action which have been or could have been asserted by the State of Minnesota." The Settlement Agreement requires the defendants to pay over $100 million to the State annually in perpetuity and imposes a number of restrictions on the defendants' conduct, including their marketing of tobacco products. Additionally, the consent judgment permanently enjoins Philip Morris from "[m]aking any material misrepresentation of fact regarding the health consequence of using any tobacco product, including any tobacco additives, filters, paper or other ingredients." The State AG retains the authority to enforce these restrictions in court. In exchange, the State "release[d] and forever discharge[d]" Philip Morris from any and all claims asserted in the State lawsuit, or that could have been asserted therein.

In 2001, respondents Gregory Curtis, et al., brought this action (Curtis lawsuit) against Philip Morris and Altria on behalf of themselves and all persons who purchased Philip Morris's Marlboro Lights cigarettes in Minnesota for personal consumption between their date of first sale in Minnesota and the date of class certification. The crux of the Curtis lawsuit is that Philip Morris's representations regarding its "light" cigarettes' tar and nicotine content were false and misleading, and constituted unfair and deceptive practices in violation of several Minnesota consumer protection statutes.[4] Specifically, respondents brought claims under Minn. Stat. § 8.31, subd. 3a, for alleged violations of (1) the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. §§ 325F.68–.70 (2002); (2) the Minnesota Unlawful Trade Practices Act, Minn.Stat. §§ 325D.09–.16 (2010); (3) the Minnesota

Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43–.48 (2010); and (4) the Minnesota False Statement in Advertisement Act, Minn.Stat. § 325F.67 (2010). The complaint sought compensatory damages, restitution, and injunctive relief. Philip Morris denied all allegations of wrongdoing and asserted various affirmative defenses, including those at issue in this appeal.

The pretrial proceedings in this case have been extensive. The district court granted respondents' motion to certify their class, concluding that the prerequisites of Minn. R. Civ. P. 23.01 and the requirements of Minn. R. Civ. P. 23.02(c) had been satisfied. Most relevant to this appeal, however, is the district court's grant of Philip Morris's motion for partial summary judgment dismissing the consumer protection claims asserted under Minn.Stat. § 8.31, subd. 3a. The court concluded that respondents' subdivision 3a consumer protection claims are barred by the release in the Settlement Agreement. The court also concluded that the subdivision 3a consumer protection claims do not provide a public benefit, as required by section 8.31, because respondents dismissed their prayer for injunctive relief and requested only monetary damages for class members, and because the conduct that formed the basis for respondents' claims was expressly outlawed by federal legislation enacted in 2009, making it impossible for respondents' lawsuit to have any public benefit not already conferred by the federal legislation.

The court of appeals affirmed the district court's certification of the class and reversed summary judgment on the con-

---

4. Respondents also alleged claims for common law fraud and unjust enrichment. In 2009, respondents voluntarily dismissed the former with prejudice and the district court granted judgment on the pleadings dismissing the latter. Neither claim is relevant to the questions now before us.

sumer protection claims.[5] *Curtis v. Altria Grp., Inc.,* 792 N.W.2d 836, 852, 859 (Minn. App.2010). The court concluded that respondents' consumer protection claims asserted under section 8.31, subdivision 3a, satisfied the public benefit requirement and were not released by the Settlement Agreement. *Id.* at 852.

## I.

Philip Morris contends that the court of appeals erred in reversing the district court's order granting partial summary judgment in its favor. Specifically, Philip Morris argues that respondents' consumer protection claims asserted under section 8.31, subdivision 3a, do not satisfy the public benefit requirement previously adopted by the court in *Ly v. Nystrom,* 615 N.W.2d 302 (Minn.2000). Alternatively, Philip Morris argues that the Settlement Agreement released those claims. Respondents argue that the State AG does not have authority to settle their consumer protection claims asserted under Minn.Stat. § 8.31, subd. 3a, and that the Settlement Agreement did not release those claims.

On appeal from summary judgment, we examine whether there are any genuine issues of material fact that would preclude summary judgment and whether the district court erred in its application of the law. *Dykes v. Sukup Mfg. Co.,* 781 N.W.2d 578, 581 (Minn.2010). We review the district court's application of the law de novo. *Id.* Additionally, we review questions of statutory interpretation and the interpretation of a settlement agreement and release de novo. *Booth v. Gades,* 788 N.W.2d 701, 705 (Minn.2010); *Krueger v.*

*Zeman Constr. Co.,* 781 N.W.2d 858, 861 (Minn.2010).

Essentially, we must decide whether the State AG has the authority to release respondents' consumer protection claims asserted under section 8.31, subdivision 3a, whether respondents' claims satisfy the public benefit requirement as set forth in *Ly v. Nystrom,* and whether respondents' consumer protection claims asserted under section 8.31, subdivision 3a, were released by the Settlement Agreement. We will consider each question in turn.

## A.

Respondents argue that because a private litigant's right to bring a lawsuit under section 8.31, subdivision 3a, is separate from the State AG's right under section 8.31, subdivision 3, the State AG does not have the authority to release their claims. We disagree.

We will first review the nature of a private litigant's subdivision 3a claim and the right of the State AG to bring a subdivision 3 claim, and then apply those principles to answer the question presented. Section 8.31 provides the State AG with broad and comprehensive authority to investigate, conduct discovery, and sue responsible parties to remedy violations, or potential violations, of the laws under subdivision 1. Minn.Stat. § 8.31, subds. 2–3. The statutory authority available to the State AG to enforce the consumer protection laws against responsible parties includes the power to: (1) serve discovery requests and obtain an order to compel compliance with those requests; (2) enter into an assurance of discontinuance with responsible parties to resolve violations;

**5.** The court of appeals also reversed the district court's determination that it had personal jurisdiction over Altria, and held that the district court did not abuse its discretion in denying respondents' motion for partial summary judgment based on collateral estoppel and did not err in denying Philip Morris's motion for partial summary judgment based on the statute of limitations. These issues are not before us.

(3) seek court approval to deposit moneys recovered by the State AG into the State's general fund; (4) sue on behalf of the State in the courts and seek injunctive relief and civil penalties, as well as damages, costs, and attorney fees; and (5) request the appointment of an administrator to facilitate actions brought by the State AG. *Id.*, subds. 2–2c, 3–3a, 3c.

■ Subdivision 3a provides:

In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court. The court may, as appropriate, enter a consent judgment or decree without the finding of illegality. In any action brought by the attorney general pursuant to this section, the court may award any of the remedies allowable under this subdivision.

The rights of a private litigant under subdivision 3a are not as broad as those of the State AG. Specifically, under subdivision 3a, "any person injured by a violation of any of the laws referred to in subdivision 1" may bring a lawsuit on his or her own behalf. A private litigant may bring a lawsuit under subdivision 3a and seek court approval to have the lawsuit certified as a class action. *See* Minn. R. Civ. P. 23. The State AG, however, may bring a section 8.31 lawsuit on behalf of the State and its citizens without obtaining class certification. Notably, the last sentence of subdivision 3a provides: "In any action brought by the attorney general pursuant to this section, the court may award any of the remedies allowable under this subdivision." Minn.Stat. § 8.31, subd. 3a.

■ Pursuant to section 8.31, we conclude that the remedies available to the State AG are broader than those available to a private litigant. Specifically, the State AG may seek not only the remedies available to the private litigant under subdivision 3a, but also the broad remedies solely available to the State, including civil penalties. Additionally, a private litigant does not have the right to obtain expedited discovery without the commencement of a civil action under subdivision 2 or the assurance of discontinuance procedures under subdivision 2b. Put differently, the right of a private litigant to bring a lawsuit under subdivision 3a is part of the broader authority of the State AG to bring a lawsuit under subdivision 3 to enforce all remedies available to it, including the remedies under subdivision 3a.

Our conclusion is consistent with our case law interpreting subdivision 3a. We have previously concluded that the right of a private litigant to bring a lawsuit under subdivision 3a is limited by the authority given the State AG. *Ly,* 615 N.W.2d at 313. Specifically, a private litigant bringing a subdivision 3a claim acts in lieu of the State AG. *Id.* at 311. In *Ly,* we held that private litigants must establish "that their cause of action benefits the public" in order to proceed with a claim under section 8.31, subdivision 3a. *Id.* at 314. We reasoned that because subdivision 3a "grants private citizens the right to act as a 'private' attorney general, the role and duties of the attorney general with respect to enforcing the fraudulent business practices laws must define the limits of the private claimant under the statute." *Id.* at 313.

Moreover, the scope of subdivision 3a is "no broader than the source of its authority—that of the attorney general—whose duties are to protect *public* rights in the interest of the state." *Id.; see also id.* at 314 (concluding that Ly, who was the buy-

er of a restaurant business, could not recover attorney fees in a subdivision 3a claim against the seller because the claim provided no benefit to the public); *Collins v. Minn. Sch. of Bus., Inc.,* 655 N.W.2d 320, 330 (Minn.2003) (concluding that plaintiffs' successful prosecution of their subdivision 3a claims benefited the public and holding that plaintiffs were therefore entitled to recover reasonable attorney fees under subdivision 3a). Because we have interpreted the statute to require a public benefit, that construction guides us in resolving disputes over the meaning of the statute. *See W. Union Tel. Co. v. Spaeth,* 232 Minn. 128, 132, 44 N.W.2d 440, 441 (1950) (stating that the "judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it originally") (citation omitted) (internal quotation marks omitted).

■ Respondents suggest that we should abandon the public benefit requirement and overturn *Ly* because the requirement is not found in the statute. We reject respondents' invitation to overturn *Ly.* The doctrine of stare decisis provides that we adhere to previous decisions to promote stability in the law. *Oanes v. Allstate Ins. Co.,* 617 N.W.2d 401, 406 (Minn.2000). We are extremely reluctant to override previous case law unless there is a compelling reason to do so. *In re Collier,* 726 N.W.2d 799, 809 (Minn.2007). Respondents have not established that the decision in *Ly* was unsound or that there is a compelling reason to overturn it. Consequently, we reaffirm our holding in *Ly* that subdivision 3a authorizes a private litigant injured by a violation of the laws set forth in subdivision 1 to bring a lawsuit seeking the relief described in the statute, provided the private litigant establishes that its lawsuit satisfies the public benefit requirement. *Ly,* 615 N.W.2d at 314.

■ We conclude that the right of respondents to bring a lawsuit under subdivision 3a is limited by the role and duties of the State AG to enforce the laws enumerated in subdivision 1. Specifically, the scope of respondents' rights under subdivision 3a is no broader than the authority of the State AG under section 8.31. Moreover, the private litigant must establish that its subdivision 3a claims satisfy the public benefit requirement. Finally, the rights of the State AG to bring a specific lawsuit are superior to the right of a private litigant to bring the same lawsuit.

■ We next examine whether the State AG had the authority to release respondents' subdivision 3a claims. It is undisputed that the State AG has the authority under section 8.31 to bring a lawsuit "on behalf of the state" to enforce the laws listed in subdivision 1. Notably, the State AG acts as the attorney for the citizens of Minnesota and has the authority to bring claims and settle claims under section 8.31 on behalf of the citizens of Minnesota. *See Head v. Special Sch. Dist. No. 1,* 288 Minn. 496, 503, 182 N.W.2d 887, 892 (1970) ("The attorney general may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of this state, the preservation of order, and the protection of legal right."). Thus, the State AG represents the citizens of the State in a section 8.31 lawsuit. In doing so, the State AG acts "representatively" and "derivatively" for the citizens of Minnesota. *See Humphrey ex rel. State v. McLaren,* 402 N.W.2d 535, 543 (Minn.1987) (stating that a government attorney "has for a client the public, a client that includes the general populace" and "must take positions with the common public good in mind").

■ Under Minn.Stat. § 8.31, the State AG has the authority to bring a

lawsuit under subdivision 3 on behalf of the State, and to seek not only the relief available to the State AG under subdivision 3, but also the relief available to a private litigant under subdivision 3a. It logically follows that the State AG has the authority to settle and release a private litigant's subdivision 3a claims. As long as the AG is acting in the best interests of the state, we discern no legislative intent to limit the authority of the State AG to settle section 8.31 lawsuits, even to the extent of releasing potential claims of private litigants under subdivision 3a. *See generally* Minn.Stat. § 8.31. Instead, the statute grants broad authority to the State AG to investigate, commence legal action to enforce the consumer protection statutes in subdivision 1, and to seek the relief provided in subdivisions 3 and 3a, including the authority to settle those claims.

Amicus State of Minnesota argues that a private litigant who asserts a subdivision 3a claim does not have the authority to settle or release the State's subdivision 3 claim. *See* Minn.Stat. § 8.31, subd. 3a; *see also* Minn.Stat. § 8.01 (providing to the State AG, alone, authority to litigate for the State in civil causes of action); Minn. Stat. § 8.31, subd. 3 (stating that "[o]n becoming satisfied that any of [the laws enumerated in subdivision 1] has been or is being violated, or is about to be violated, the attorney general shall be entitled, on behalf of the state" to bring suit); *Head*, 288 Minn. at 503–04, 182 N.W.2d at 892 (discussing the State AG's broad statutory and common law authority).

We conclude that a private litigant pursuing a subdivision 3a claim does not have the authority to settle or release the section 8.31 claims of the State without the express consent of the State. A private litigant, however, does have the authority to settle its own subdivision 3a claim with a responsible party, and a district court may approve a settlement of a subdivision 3a class action of all similarly situated private litigants who could bring a subdivision 3a lawsuit. But that settlement agreement and release are not binding on the State without express written consent of the State AG, approved by the court.

### B.

Philip Morris argues that respondents' subdivision 3a consumer protection claims were released by the Settlement Agreement.[6] Thus, we must determine whether the Settlement Agreement intended to release respondents' subdivision 3a consumer protection claims. A settlement agreement is a contract, and the court examines the language of the agreement to determine the intent of the parties. *Dykes*, 781 N.W.2d at 581–82; *see also Ryan v. Ryan*, 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971) (noting that a settlement is contractual in nature). A release is also governed by the rules of contract construction. *Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 562 (Minn. 1995).

We have not prescribed specific language that is required to create a

---

6. Philip Morris argues alternatively that the subdivision 3a claims do not satisfy the public benefit requirements, and that the Settlement Agreement released the subdivision 3a claims. Because they are alternative arguments, a decision by the court that Philip Morris prevails on one argument renders a decision on the other argument dictum. We conclude that the case may be easily resolved on the release of claims argument, and therefore we decide the case on that basis. Thus, we assume without deciding that respondents' subdivision 3a consumer protection claims satisfy the public benefit requirement and turn to the release argument raised by Philip Morris.

valid release of claims. *Dykes*, 781 N.W.2d at 582. Rather, we examine the language of a release on a case-by-case basis to assess its validity and effect. *Id.* (citing *Pac. Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 558 (Minn. 1977)). Generally, a release must manifest the intent to release, discharge, or relinquish a right, claim, or privilege by a person in whom the claim exists to a person who seeks to be released. *Id.* (citing *Gronquist v. Olson*, 242 Minn. 119, 125, 64 N.W.2d 159, 163–64 (1954)). A general release of all claims, known and unknown, will be enforced by the court if the intent is clearly expressed. *See, e.g., Myers v. Fecker Co.*, 312 Minn. 469, 475, 252 N.W.2d 595, 599 (1977) ("[I]f the parties intended a release to be final with respect to unknown as well as known injuries, it will be held to be binding.").

The State lawsuit was brought pursuant to section 8.31, and alleged that Philip Morris violated the consumer protection statutes set forth in section 8.31 by making fraudulent, misleading, and deceptive statements regarding the health impacts of their cigarettes. The State AG claimed that Philip Morris, among others, "intentionally cheated smokers" because they "knew that smokers who were moving in droves to lower tar and nicotine cigarettes, thinking they were safer, were obtaining the same tar and subject to virtually the same risks as the higher tar cigarettes." The State AG introduced expert opinion testimony that Philip Morris knowingly misrepresented facts in the marketing of its "low tar" cigarettes. The State lawsuit was settled before the case was submitted to the jury, and the Settlement Agreement released all claims that the State of Minnesota made, or could have made, in the State lawsuit.

Similarly, the relevant claims of the Curtis lawsuit were brought pursuant to section 8.31, subdivision 3a, and alleged that Philip Morris's use of the words "light" and "lowered tar and nicotine" between 1971 and the date of the lawsuit was fundamentally deceptive and falsely represented that Marlboro Lights were a less harmful alternative to regular cigarettes. According to respondents, Philip Morris knew the techniques used to lower levels of tar and nicotine in "light" cigarettes increased the tar's toxicity and the risk to smokers' health and fraudulently kept that information from consumers. Thus, the claims asserted in the Curtis lawsuit are very similar to the claims asserted in the State lawsuit regarding light cigarettes.

The release language of the Settlement Agreement is broad and comprehensive. Paragraph III.B. provides that the State shall release and forever discharge [Philip Morris] ... *from any and all* manner of civil claims, demands, actions, suits and causes of action, damages whenever incurred, liabilities of any nature whatsoever, including civil penalties, as well as costs, expenses and attorneys' fees, *known or unknown, suspected or unsuspected, accrued or unaccrued, whether legal, equitable or statutory* ("Claims") that the State of Minnesota ... whether directly, indirectly, representatively, derivatively or in any other capacity, ever had, now has or hereafter can, shall or may have, as follows:

a. for past conduct, as to *any Claims relating to the subject matter of this action* which have been asserted or could be asserted now or in the future in this action or a comparable Federal action by the State; and

b. for future conduct, only as to *monetary Claims directly or indirectly based on, arising out of or in any way related to,* in whole or in part, the use of or exposure to Tobacco

Products manufactured in the ordinary course of business, including without limitation any future claims for reimbursement for health care costs. . . .

(Emphasis added.)

■■■ We conclude that the State unambiguously released all of its section 8.31 claims against Philip Morris for "past conduct." The release language as to past conduct is broad and inclusive. The release applies to "any Claims relat[ed] to the subject matter of this action which have been asserted or could be asserted now or in the future in this action or a comparable Federal action by the State." The only limitation is that released claims must be "relat[ed] to" the subject matter of the State lawsuit. In relation to the State lawsuit, the Curtis lawsuit's subdivision 3a consumer protection claims assert violation of the *same* consumer protection statutes arising from the *same* fraudulent and deceptive misrepresentations regarding the health risks associated with the use and exposure to light cigarettes. Accordingly, we conclude that the Curtis lawsuit's subdivision 3a consumer protection claims for conduct prior to the Settlement Agreement fall within the scope of the released "past conduct" claims.

■■■ Similarly, we conclude that the State unambiguously released all of its section 8.31 claims against Philip Morris for "future conduct." The release of future

conduct is subject to two conditions.[7] First, the release is limited to claims that are "directly or indirectly based on, arising out of or in any way related to" the "use of or exposure to Tobacco Products." Second, the release is limited to "monetary Claims," and does not preclude section 8.31 claims for injunctive relief. The Curtis lawsuit's subdivision 3a consumer protection claims were related to the use of and exposure to tobacco products. It is axiomatic that a cigarette is "used" when it is smoked, and smokers are "exposed to" cigarette smoke by drawing it into their lungs. Respondents' theory of recovery is that Philip Morris's use of the words "lights" and "lowered tar and nicotine" in connection with Marlboro Lights was false because the cigarettes *as used under actual conditions* are not "light" and do not expose smokers to "lowered tar and nicotine."[8] Additionally, prior to the district court's consideration of Philip Morris's motion for summary judgment, respondents had dismissed their plea for injunctive relief. As a result, the subdivision 3a consumer protection claims upon which the district court granted summary judgment sought only monetary relief.

Applying the release language to respondents' subdivision 3a consumer protection claims, we conclude that respondents' claims fall within the scope of the release in the Settlement Agreement, and therefore were released. Accordingly, we con-

7. Respondents do not argue that a release of "future conduct" is not enforceable as against public policy. It is significant that this is not a release between private parties. Rather, it is a release by the State AG of a statutory cause of action under section 8.31. Because the issue of enforceability was not briefed or argued, we decline to reach it.

8. The dissent argues that respondents' subdivision 3a consumer protection claims are not in any way related to the use of tobacco products because a statutory consumer fraud

claim does not require that the plaintiff bought or used the product. But a statutory consumer fraud claim *does* require that the allegedly fraudulent statements be false. Here, the falsity of Philip Morris's statements turns on how much tar and nicotine Marlboro Lights deliver when smoked (i.e., used) under actual conditions, and therefore respondents' subdivision 3a consumer protection claims are related to the use of and exposure to tobacco products.

clude that respondents' subdivision 3a consumer protection claims for conduct that occurred after the Settlement Agreement fall within the scope of the released "future conduct" claims.

■ Respondents rely on paragraph V.M. of the Settlement Agreement to argue that they are not parties to the Settlement Agreement, and therefore it is not binding on them. The relevant portion of paragraph V.M. provides: "Except as expressly provided in this Settlement Agreement, no portion of this Settlement Agreement shall bind any non-party or determine, limit or prejudice the rights of any such person or entity." We read this sentence to mean that the agreement is not binding on and does not determine the rights of non-parties "[e]xcept as expressly provided" in the agreement. Thus, we must examine the Settlement Agreement to determine whether it expressly determines the rights of non-parties such as respondents to assert claims under section 8.31, subdivision 3a.

■ We conclude that paragraph III.B. of the Settlement Agreement releases respondents' subdivision 3a consumer protection claims, and therefore expressly determines the right of respondents to bring those claims. Specifically, paragraph III.B. releases any and all claims of the State, "whether directly, indirectly, representatively, derivatively or in any other capacity," against Philip Morris. We read the words "representatively" and "derivatively" to encompass respondents' right as private litigants to bring subdivision 3a claims against Philip Morris. Because the State AG brought and released those claims, including subdivision 3a consumer protection claims that could have been brought on behalf of private litigants, the release expressly determined respondents' right to bring a subdivision 3a consumer protection claim.

## II.

Accordingly, we conclude that the 1998 Settlement Agreement entered into by the State AG and Philip Morris expressly released and barred respondents' consumer protection claims asserted under section 8.31, subdivision 3a, and is binding on respondents. Therefore, we reverse the court of appeals and affirm the district court's entry of summary judgment on behalf of Philip Morris on the subdivision 3a consumer protection claims. Because all of respondents' claims have been dismissed, the issue of whether the plaintiff class was properly certified is moot, and we do not reach it.

Reversed.

MEYER, Justice, took no part in the consideration or decision of this case.

STRAS, Justice, took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I respectfully dissent. Minnesota Statutes § 8.31, subd. 3a (2010), permits "any person injured by a violation of any of the laws referred to in subdivision 1" to bring a civil action to recover damages. The court holds that the "future conduct" clause in the 1998 Settlement Agreement between Philip Morris and the Minnesota Attorney General (State AG) expressly released and barred Curtis's claims with respect to conduct that occurs after the date of the settlement agreement. First, it is not clear to me that the State AG may release a private party's section 8.31 claims because that section's plain language appears to provide private parties a cause of action independent of the State AG's right to sue. But, even assuming the State AG may release a private party's claims, I do not read the "future conduct"

clause as releasing Curtis's fraud claims at issue here.

The "future conduct" clause in the 1998 Settlement Agreement applies only to "monetary Claims directly or indirectly based on, arising out of or in any way related to, in whole or in part, the use of or exposure to Tobacco Products." Curtis's consumer protection claims are predicated on the allegation that Philip Morris's use of the words "light" and "lowered tar and nicotine" in its advertising and promotion of its cigarettes was deceptive and false. Such claims do not relate either generally to the use of tobacco or specifically to Curtis's use of tobacco and therefore are not released by the terms of the 1998 Settlement Agreement.

Curtis raises claims under a variety of consumer protection statutes. I discuss one such statute, and would apply the same reasoning to the fraud claims arising under all of the consumer protection statutes Curtis invokes in his complaint. Under Minn.Stat. § 325F.69, subd. 1 (2010), a plaintiff may state a claim for deceptive practices and misrepresentations with respect to the sale of merchandise. *See Flora v. Firepond, Inc.,* 260 F.Supp.2d 780, 787 (D.Minn.2003). The statute is "construed more broadly than common law fraud." *Id.* (citing *Meyer v. Dygert,* 156 F.Supp.2d 1081, 1086 (D.Minn.2001)). A claim under this statute is based on "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn.Stat. § 325F.69, subd. 1. To state a fraud claim under section 325F.69, it is not necessary to plead that the plaintiff was in fact misled or that the plaintiff purchased the merchandise. *See Grp. Health Plan, Inc. v. Philip Mor-*

*ris, Inc.,* 621 N.W.2d 2, 4 (Minn.2001) (holding that plaintiffs need not "be purchasers of the defendants' products in order to properly plead a claim under" statutes such as section 325F.69, subdivision 1); *id.* at 13 (holding that "it is not necessary to plead individual consumer reliance on the defendant's wrongful conduct to state a claim for damages under subdivision 3a and" misrepresentation statutes such as section 325F.69, subdivision 1). If the plaintiffs need not plead that they purchased the product, certainly, they need not plead that they used the product. Moreover, it is irrelevant whether *anyone* has used the product. Curtis's fraud claims are predicated on the falsity of the statements and are not "directly or indirectly based on," and do not "aris[e] out of or in any way relate[ ] to . . . the use of or exposure to Tobacco Products."

Related law on preemption is consistent with the interpretation that fraud claims are not related to "the use of or exposure to Tobacco Products." Under 15 U.S.C. § 1334(b) (2006), "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." Courts have considered whether state-law fraud claims are "based on smoking and health" and are therefore preempted by section 1334(b). *See, e.g., Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 508, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone,* the Supreme Court held that the plaintiff's fraudulent misrepresentation claims, even in the context of advertising and promotions, are not preempted by federal law because they "are predicated not on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." *Id.* at 528–29, 112 S.Ct. 2608. Other courts have similarly held that sec-

tion 1334(b) does not preempt state-law fraud claims. *See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1202 (11th Cir.2004) (holding that "insofar as the [conspiracy to fraudulently misrepresent] claim is premised on the allegation that defendants made statements knowing their falsity, or with reckless disregard as to their truth or falsity, it is not preempted by" section 1334(b)); *Mulford v. Altria Grp., Inc.*, 506 F.Supp.2d 733, 750 (D.N.M.2007) (holding claim that defendants deceptively marketed cigarettes as "light" and as delivering "lowered tar and nicotine" was not preempted by section 1334(b)); *see also id.* at 750–51 (citing cases).

Because I would hold that Curtis's fraud claims based on conduct that occurred after the 1998 Settlement Agreement were not released by the "future conduct" clause in the agreement, I respectfully dissent.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Page.