*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0221**

Maria F. Olson, et al.,
Appellants,

vs.

James Scott Kent, et al.
Defendants,

Peoples National Bank of Mora,
Respondent.

**Filed December 19, 2016
Affirmed in part and reversed in part
Rodenberg, Judge**

Isanti County District Court
File No. 30-CV-13-716

Frederic W. Knaak, Craig J. Beuning, Wayne B. Holstad, Holstad & Knaak, PLC, St. Paul, Minnesota (for appellants Maria F. Olson, Shannon Olson, and SSO, LLC)

Vincent D. Louwagie, Steven C. Kerbaugh, Daniel R. Hall, Peter J. McElligott, Anthony Ostlund Baer & Louwagie P.A., Minneapolis, Minnesota (for respondent Peoples National Bank of Mora)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and

Hooten, Judge.

**RODENBERG**, Judge

Appellants Maria F. Olson, Shannon Olson, and SSO, LLC, appeal from a judgment in favor of respondent Neighborhood National Bank f/k/a People's National Bank of Mora for $150,000 plus attorney fees for claimed breach of the parties' earlier settlement agreement.[1]  Appellants also challenge the district court's order denying appellant Maria Olson's motion to vacate a settlement agreement that contained a conditional confession of judgment for that amount.  We affirm in part and reverse in part.

## FACTS

In 2010, appellants conveyed two properties to MNSilverCare, Inc. (MNSilverCare), and James Scott Kent.  The purchases were financed, in part, through loans provided by respondent.  The sale of one of the properties included seller financing, and a promissory note for $164,500 was executed by MNSilverCare and James Scott Kent.  At closing, the parties to the promissory note signed a Standby Creditor's Agreement, acknowledging MNSilverCare's $164,500 debt to appellants and that the agreement was entered into "[t]o induce [respondent] to make loans" to MNSilverCare.  The agreement included terms requiring that appellants take no action to enforce MNSilverCare's obligation to pay appellants without respondent's approval, and that all future loans made by appellants to MNSilverCare would be subject to the terms of the Standby Creditor's Agreement.

---

[1] The settlement agreement was not signed by the parties, but it was placed into the record and accepted by the parties in open court, as discussed below.

In 2013, appellants sued Kent and MNSilverCare for breach of contract and unjust enrichment. Kent and MNSilverCare asserted an affirmative defense that the claims were barred by the Standby Creditor's Agreement.

In February 2014, appellants amended their complaint to include a claim against respondent for tortious interference with contract and for a declaratory judgment that the Standby Creditor's Agreement and the $164,500 promissory note were void. Appellants claimed that they did not loan MNSilverCare and Kent the $164,500 evidenced in the promissory note, but rather, Kent and MNSilverCare executed a promissory note for $458,000. Respondent asserted counterclaims for breach of contract, unjust enrichment, and fraud concerning appellants' claim that they did not provide the loan described in the Standby Creditor's Agreement. Respondent asserted that, because of the fraudulent execution of the Standby Creditor's Agreement and the undisclosed promissory note for $458,000, respondent had loaned funds for substantially more than the property was worth, which caused MNSilverCare to default and eventually lose the property in foreclosure. Respondent's fraud claim was dismissed.

Appellants settled their claims against Kent and MNSilverCare, and those claims were dismissed with prejudice. Appellants' claims against respondent were dismissed by summary judgment. Respondent's claims against appellants for breach of contract and unjust enrichment then remained before the district court as the only unresolved claims.

In March 2015, respondent and appellants reached a settlement agreement. The parties submitted an electronic copy of the agreement to the district court and confirmed the fact of settlement and the accuracy of the written agreement in open court. In response

3

to questioning by the district court, the parties agreed that no promises were made other than those laid out in the written agreement and that the agreement was to be a "full and final settlement" of the matter.

The agreement provided, in pertinent part:

> 4.    Maria Olson, Shannon Olson, Shannon's Exteriors and SSO, LLC, on behalf of themselves and on behalf of any entity which they, or any of them, control, make a full release of all claims, known or unknown, through date of agreement against [respondent], its agents, employees, attorneys, or others acting on its behalf except that Maria Olson and Shannon Olson do not release any claim they may have against the law firm of Hinshaw & Culbertson LLP for acting with an alleged conflict of interest. This is intended to be the broadest release allowed by law.

The agreement included a covenant that appellants not sue any of the entities released "based on any facts or events that arose on or before date of agreement." The agreement also stated:

> 6.    Maria Olson, Shannon Olson, Shannon's exteriors and SSO, LLC confess judgment against Neighborhood National Bank in the amount of $150,000. Judgment may be entered . . . if Maria Olson, Shannon Olson, Shannon's Exteriors and/or SSO, LLC, or any entity which they, or any of them, control, *commence any complaint or claim against the bank* . . . based on any facts or events that arose on or before date of this agreement, including but not limited to any claim released or any claim covered by the covenant not to sue above.

(Emphasis added.)

The parties later discussed adding an exception to the agreement concerning possible claims by appellants against the law firm of Lindberg & McKinnis. Respondent refused to make this additional exception to the settlement agreement and release.

4

Appellant Maria Olson claims to have become aware of an admonition from the Minnesota Office of Lawyers Professional Responsibility "for [Dwight McKinnis's] professional misconduct in the SBA ARC loan matter," which she claims resulted in damage to her.[2] In April 2015, she sued Dwight McKinnis, an attorney who had worked for respondent in 2011, claiming that McKinnis had represented her in a financial matter while simultaneously representing respondent to collect on appellants' SBA ARC loan.

Upon learning of Maria Olson's lawsuit against McKinnis, respondent moved the district court to enforce the settlement agreement and to have judgment against appellants for $150,000 under paragraph six of the settlement agreement. Maria Olson, pro se, opposed the motion to enforce the settlement agreement, claiming that she did not breach its terms because McKinnis was not referenced specifically in the agreement and because she was suing him strictly in his capacity as her attorney, and not in his capacity as respondent's attorney. In a memorandum of law opposing respondent's motion to enforce the settlement agreement and enter judgment, Maria Olson also argued:

> The Settlement Agreement does not provide the remedy the bank is asking for. If [the district court] interprets the Settlement Agreement to blanket every attorney the bank has used, and that Maria Olson cannot bring action against Mr. McKinnis in his capacity as her attorney, this would still not provide the bank a right to obtain judgment of $150,000 against the Olsons. Paragraph 6 of the [settlement agreement] states specifically a judgment for $150,000 may be entered IF the Olsons commence any complaint or claim against the Bank. The Olsons have not brought a claim against the Bank.

---

[2] Whether there was such an admonition, and of what it consisted if there was one, is not before us in this appeal.

5

In August 2015, the district court granted respondent's motion to enforce the settlement agreement and entered judgment against appellants in the amount of $150,000. The district court found that the claim against McKinnis arose out of events that occurred while he was acting on respondent's behalf and before the date of the settlement agreement. The district court determined that Maria Olson's claims against McKinnis fall "within the very broad language" of paragraph four of the settlement agreement, and the agreement contained a covenant that appellants not sue persons or entities released by the settlement agreement. Stating that "[t]he remedy for breach of the settlement agreement is entry of judgment in the amount of $150,000.00," the district court concluded that "the Bank is entitled to that remedy."

In October 2015, Maria Olson moved the district court to vacate the settlement agreement and grant relief from the August 20, 2015 judgment under Minn. R. Civ. P. 60.02, alleging fraud and newly discovered evidence. She claimed that respondent committed fraud on the court and appellants by failing to disclose documents during discovery and by making false statements in a related case that was settled as part of the settlement agreement. The related case was commenced in 2013 and concerned the existence of easements over Lot 2, a property that had not been included in the original conveyances. No discovery was undertaken in the related case.

In her motion to vacate the settlement agreement, Maria Olson argued that appellants were induced to enter into the settlement agreement by respondent's fraud in "failing to disclose material information and claiming false damages." She argued that respondent failed to disclose e-mails in response to discovery requests in this case and that

6

the e-mails showed that, at the time of the settlement agreement, respondent was aware that title to Lot 2 and the easements over it were not included in the conveyances. She argued that, had appellants known of respondent's awareness, they would not have settled.

In an order filed on December 7, 2015, the district court denied the motion to vacate the settlement agreement. The district court found that Maria Olson had not exercised due diligence in finding the evidence now claimed to be newly discovered, and that she did not demonstrate fraud because she did not rely on the alleged misrepresentations made by respondent in the related case.

In a separate order filed on December 7, 2015, and on respondent's motion, the district court awarded respondent $4,528 in attorney fees incurred in enforcing the settlement agreement and obtaining the judgment against appellants for $150,000 based on the claims made against McKinnis in violation of the covenant not to sue.

This appeal followed.[3]

## D E C I S I O N

### I. Denial of Motion to Vacate Settlement Agreement

Appellants challenge the district court's order denying Maria Olson's motion to vacate the settlement agreement under Minn. R. Civ. P. 60.02. They argue that the district

---

[3] In a special-term order, we construed the appeal as taken from the judgments entered on August 20, 2015 and December 7, 2015, and the December 7, 2015 order denying Maria Olson's motion to vacate the settlement agreement.

court abused its discretion in refusing to vacate the settlement agreement based on newly discovered evidence and fraudulent concealment of documents.[4]

"Settlement of disputes without litigation is highly favored, and such settlements will not be lightly set aside by the courts." *Johnson v. St. Paul Ins. Cos.*, 305 N.W.2d 571, 573 (Minn. 1981) (citation omitted). "[V]acating a stipulation of settlement rests largely within the discretion of the trial court, and the court's action in that regard will not be reversed unless it be shown that the court acted in such an arbitrary manner as to frustrate justice." *Id.* (quotation omitted). A court abuses its discretion under rule 60.02 when its decision is "against logic and facts on the record," is "arbitrary or capricious," or is based on "an erroneous view of the law." *Posey v. Fossen*, 707 N.W.2d 712, 714 (Minn. App. 2006) (quotation omitted).

The Minnesota Rules of Civil Procedure provide as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representatives from a final judgment . . . order, or proceeding . . . for the following reasons:
> . . .

---

[4] Respondent requests that we disregard portions of appellants' brief that fail to adequately cite the record. Each statement of a material fact in a brief "shall be accompanied by a reference to the record." Minn. R. Civ. App. P. 128.02, subd. 1(c); Minn. R. Civ. App. P. 128.03. Failure to comply with the rules requiring citations to the record "can diminish a brief's persuasiveness, lead to non-consideration of an issue, or dismissal of an appeal." *Cole v. Star Tribune*, 581 N.W.2d 364, 371-72 (Minn. App. 1998) (citations omitted). We may decline to strike portions of a brief if the critical facts are supported by documents in the record. *Hecker v. Hecker*, 543 N.W.2d. 678, 681 n.2 (Minn. App. 1996), *aff'd*, 568 N.W.2d 705 (Minn. 1997). Although appellants did not use consistent or accurate citations in accordance with the applicable appellate rules, the material facts necessary for our decision are supported by documents in the record. We therefore deny respondent's request.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial pursuant to Rule 59.03;

(c) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . .

Minn. R. Civ. P. 60.02. The party seeking to vacate a settlement has the burden of showing sufficient grounds for relief. *Johnson*, 305 N.W.2d at 573. *See City of Barnum v. Sabri*, 657 N.W.2d 201, 205 (Minn. App. 2003) ("The burden of proof in a proceeding under Rule 60.02 is on the party seeking relief.").

**A.** *Newly discovered evidence*

Appellants argue that newly discovered e-mails demonstrate that respondent knew that Lot 2 was not included in the conveyance of the other properties at the time it sued for a declaratory judgment that easements existed over Lot 2. Appellants claim they settled this and the related case because they were unaware that respondent possessed evidence that would have defeated respondent's claims.

Rule 60.02(b) allows relief for newly discovered evidence that "by the exercise of reasonable diligence," could not have been discovered before. *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 631 (Minn. 2012), *as modified* (Apr. 19, 2012) (quotations omitted). In order to establish the exercise of reasonable diligence, a party must show that he employed "reasonable investigation efforts to find and produce the evidence." *Turner v. Suggs*, 653 N.W.2d 458, 467 (Minn. App. 2002) (quotation omitted). Reasonable diligence "requires the use of available discovery tools as well as reasonable investigation efforts." *Regents of Univ. of Minn. v. Med. Inc.*, 405 N.W.2d 474, 479 (Minn.

9

App. 1987), *review denied* (Minn. July 15, 2897).  The newly discovered evidence must be relevant and admissible, and likely to have an effect on the result; the evidence must not be merely collateral, impeaching, or cumulative.  *Turner*, 653 N.W.2d at 467.  If a party fails to prove any of the required factors for newly discovered evidence, then rule 60.02 relief is inappropriate.  *Frazier*, 811 N.W.2d at 631.

The district court found that appellants did not conduct any discovery in the related case involving Lot 2 and easements, and that relief under rule 60.02(b) was therefore unavailable.  Appellants did not seek discovery in the related case involving the allegations that the conveyances included easements over Lot 2.  Nor is it clear that the discovery requests in this case would have resulted in the discovery of the e-mails because the discovery requests sought information about the "claims and defenses in this lawsuit."  This case was about the execution of the $164,500 promissory note and the Standby Creditor's Agreement.  The record does not include respondent's discovery responses, nor does it appear that appellants moved to compel additional discovery before entering into the settlement agreement.

Appellants have not demonstrated that the district court abused its discretion in denying relief under rule 60.02(b).  They have failed to demonstrate that they could not have discovered the information they now claim to be newly discovered before they entered into the settlement agreement by the exercise of reasonable diligence, or that they exercised "reasonable investigation efforts to find and produce the evidence."  *Turner*, 653 N.W.2d at 467; *see also Frazier*, 811 N.W.2d at 631.  The burden of showing sufficient grounds to vacate the settlement agreement is on appellants, and failure to show sufficient grounds

10

bars relief under Minn. R. Civ. P. 60.02(b). *Frazier*, 811 N.W.2d at 631; *Johnson*, 305 N.W.2d at 573. On this record, the district court did not base its decision on an erroneous view of the facts or the law in finding that appellants did not exercise due diligence in discovering the e-mails in question through use of available discovery tools before entering into the settlement agreement. It therefore acted within its discretion in declining to vacate the settlement agreement.

### B. *Fraud by an adverse party*

Appellants argue that, because respondent fraudulently concealed material facts subject to the discovery requests in the current case, appellants were not aware that respondent's claims regarding Lot 2 and the easements were baseless in the other case, and they were therefore fraudulently induced to settle because of the pending lawsuit.

The district court may vacate an order or judgment that is attributable to an adverse party's fraud, misrepresentation, or misconduct. Minn. R. Civ. P. 60.02(c). Fraud by an adverse party may justify relief, if the party alleging fraud establishes by clear and convincing evidence that the "adverse party engaged in fraud or other misconduct which prevented it from fully and fairly presenting its case." *Regents of Univ. of Minn.*, 405 N.W.2d at 480. The district court finds facts, weighs evidence, and assesses credibility to decide whether fraud occurred. *J.L.B. v. T.E.B.*, 474 N.W.2d 599, 603 (Minn. App. 1991), *review denied* (Minn. Oct. 11, 1991). If fraud occurred, the district court should vacate the judgment only if the fraud affected the central issue rather than a collateral issue. *Turner*, 653 N.W.2d at 466.

11

The district court examined the elements of fraud in relation to Maria Olson's argument that respondent concealed evidence that it knew Lot 2 was not included in the conveyances and that respondent's claims in the related case were therefore false. The district court found that respondent's claims in the related case were not false representations, but were instead claims made in litigation. It also found that Maria Olson did not rely on the "representations" in any event, and that she specifically denied respondent's claims. The district court also found that appellants had not conducted any discovery to investigate respondent's claims before settling the case. The burden to demonstrate fraud is on the party seeking relief. *Sabri*, 657 N.W.2d at 205. We see no error in the district court's determination that appellants did not produce clear and convincing evidence of fraud inducing them to settle. *Regents of Univ. of Minn.*, 405 N.W.2d at 480. The record supports the district court's findings and the district court acted within its discretion in denying relief under Minn. R. Civ. P. 60.02(c).

## C. *Public Policy*

Appellants argue that the settlement agreement violates public policy because it released an attorney, an officer of the court, from liability. Generally, a reviewing court will only consider issues that the record shows were presented to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Appellants did not make this argument before the district court, and we therefore decline to address it.

**II.     Order Granting Motion to Enforce Settlement Agreement and Enter Judgment**

Appellants also argue that Maria Olson did not breach the terms of the settlement agreement and that the settlement agreement was ambiguous.  Respondent argues that appellants forfeited their arguments that the settlement agreement is ambiguous because they did not raise this argument to the district court.  For the reasons set forth below, we conclude that the settlement agreement is unambiguous, but that the district court erred in granting respondent judgment under the plain language of paragraph six.

"Settlement of claims is encouraged as a matter of public policy."  *Voicestream Minneapolis, Inc. v. RPC Props., Inc.*, 743 N.W.2d 267, 271 (Minn. 2008).  A settlement agreement is a contract.  *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581-82 (Minn. 2010).  If the language is clear and unambiguous, the district court may enforce the settlement agreement as a matter of law, giving the language its plain and ordinary meaning.  *Id.* at 582.  But if the agreement is ambiguous and the parties dispute material facts, the district court must conduct an evidentiary hearing.  *Voicestream*, 743 N.W.2d at 272.

In *Voicestream*, the supreme court stated that a district court shall treat a motion to enforce a settlement agreement "as it would a motion for summary judgment."  *Id.* at 273.  A contract may be summarily enforced if it is clear and unambiguous, *id.*, but "[s]ummary judgment is inappropriate where terms of a contract are at issue and those terms are ambiguous or uncertain," *Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 179 (Minn. 2004).  On appeal from a grant of summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in

its application of the law. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). Construction of an unambiguous contract is a question of law, which we review de novo. *Horodenski v. Lyndale Green Townhome Ass'n*, 804 N.W.2d 366, 371 (Minn. App. 2011).

Appellants argue that the lawsuit commenced by Maria Olson against the attorney McKinnis was "not part of the agreement" and that the lawsuit therefore "cannot support [respondent's] motion for enforcement or the sanctions imposed by the district court."

**A.** *Breach of the Settlement Agreement*

The district court found that Maria Olson's lawsuit against McKinnis was "within the very broad language" of paragraph four of the settlement agreement and therefore violated paragraph five. Paragraph five provided that appellants, on behalf of themselves, agreed not to sue "any of the entities released hereby, based on any facts or events that arose on or before date of agreement, including but not limited to any claims released."

"Generally, a release must manifest the intent to release, discharge, or relinquish a right, claim, or privilege by a person in whom the claim exists to a person who seeks to be released." *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 902 (Minn. 2012). "A general release of all claims, known and unknown, will be enforced by the court if the intent is clearly expressed." *Id.* We agree with the district court that the parties agreed to the "broadest release allowed by law" which included a release of all known and unknown claims against respondent's "agents, employees, attorneys, or others acting on its behalf." The parties agreed that no additional promises were made and that the agreement was to be a "full and final settlement." The district court correctly identified the objective intent

14

of the parties under paragraphs four and five to release one another and respondent's "agents, employees, [and] attorneys," from all claims arising out of the events that occurred before the date of the settlement agreement.

Appellants contend that respondent "must establish that the appellants intended to include attorney McKinnis's conflict of interest ethical violation as a term of the settlement." The settlement agreement unambiguously includes the release of all known and unknown claims against lawyers who had performed work on behalf of respondent before the date of the settlement agreement. The release includes attorney McKinnis, despite that appellants may not have known of their potential claims for malpractice at the time the agreement was consummated, because the release unambiguously includes "all claims, known or unknown." To the extent that Maria Olson was somehow mistaken as to whether McKinnis was included within the release, "[u]nilateral mistake as to the scope of a release will not avoid its plain language; appellants must come forward with evidence that there was a *mutual* mistake regarding the intended scope of the releases or that respondents induced the mistake in some way." *Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 737 (Minn. App. 1995), *review denied* (Minn. Sept. 28, 1995). Appellants have failed to show that there was a mutual mistake as to the scope of the release.

Further, to the extent that any ambiguity could have existed as to which attorneys were released by the settlement agreement, the well-recognized rule of *expressio unius est exclusio alterius* applies here. The maxim provides that "the expression of specific things in a contract implies the exclusion of all not expressed." *Maher v. All Nation Ins. Co.*, 340

15

N.W.2d 675, 680 (Minn. App. 1983) (citing *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 175, 84 N.W.2d 593, 599 (1957)), *review denied* (Minn. Apr. 25, 1984). The inclusion of the law firm of Hinshaw & Culbertson LLP within paragraph four as an exception to the general release of respondent's "attorneys" indicates the parties' intent to exclude that firm, but no others, from the release of claims.

### B. *The $150,000 judgment against appellants*

Although the settlement agreement unambiguously releases appellants' claims against McKinnis arising from his work for respondent, the agreement does not entitle respondent to judgment against appellants in the amount of $150,000 under paragraph six. The district court appears to have reasoned that the settlement agreement called for the entry against appellants for *any* breach of paragraphs four and five of the agreement. That is not what paragraph six provides. It provides that respondent is entitled to judgment if the appellants, in either their individual capacities or collectively, "commence any complaint or claim against *the bank* . . . based on any facts or events that arose on or before date of the agreement, including but not limited to any claim released or any claim covered by the covenant not to sue." (Emphasis added.) Giving the words within paragraph six their plain and ordinary meaning, the settlement agreement entitles respondent to a $150,000 judgment if appellants "commence any complaint or claim against *the bank*." (Emphasis added.) Maria Olson did not sue "the bank." She sued McKinnis.

While Maria Olson's suit against McKinnis was barred by the release language of paragraphs four and five of the settlement agreement, the district court erred in its conclusion that the remedy for the "breach of the settlement agreement is entry of judgment

16

in the amount of $150,000." Because paragraphs four, five, and six of the settlement agreement are unambiguous and do not call for the entry of judgment against appellants for *any* breach of the covenant not to sue, but are limited to breach of the covenant not to sue "the bank," we do not consider appellants' additional arguments regarding their intent and interpretation of the release at the time of entering the settlement agreement. The plain language of paragraph six does not entitle respondent to the judgment awarded by the district court. We therefore reverse that judgment.

### C. *The award of attorney fees*

Having determined that the district court erred in entering judgment in the amount of $150,000, we next consider whether the judgment for attorney fees was also in error.

"Attorney fees are recoverable if specifically authorized by contract or statute." *Horodenski*, 804 N.W.2d at 371 (quotation omitted). We review a district court's award or denial of attorney fees for abuse of discretion. *Northfield Care Ctr., Inc. v. Anderson*, 707 N.W.2d 731, 735 (Minn. App. 2006). Construction of an unambiguous contract is a question of law, which we review de novo. *Horodenski*, 804 N.W.2d at 371.

Paragraph 22 of the settlement agreement states, "If the [sic] either party breaches any provision of this agreement, they shall pay the . . . other party its attorneys' fees for enforcing this agreement, in addition to any damages." The district court's order granting respondent's motion to enforce the settlement agreement provided that the district court would also grant reasonable attorney fees incurred in bringing the motion. Respondent moved the court for an award of $4,528 in attorney fees for the "work that [respondent's counsel] performed for the benefit of [respondent] in preparing and bringing the motion"

17

and costs associated with the motion.  The district court granted the request for attorney fees on December 7, 2015, and entered judgment.

Respondent was awarded attorney fees on the basis that it expended money in bringing the motion to enforce the agreement and to have judgment entered against appellants for Maria Olson's breach of the settlement agreement.  However, and as discussed above concerning the plain language of the settlement agreement, respondent was not entitled to the $150,000 judgment on the basis of Maria Olson's suit against McKinnis.  Therefore an award of attorney fees was unwarranted under paragraph 22.  The plain language of the settlement agreement leads us to conclude that the award of attorney fees was in error.  We therefore reverse the judgment against appellants for attorney fees.

## III.    Conclusion

In sum, the district court acted within its discretion in denying appellants' motion to vacate the settlement agreement.  That agreement unambiguously released all claims against respondent's agents, employees, and attorneys for actions taken on respondent's behalf before the parties entered into the settlement agreement.  The covenant not to sue, likewise, is unambiguous and was breached by Maria Olson's lawsuit against McKinnis.  Her claims against McKinnis were unambiguously settled and released.  However, the district court erred in concluding that the remedy for that breach was effectuating the confession of judgment under paragraph six.  Paragraph six, giving the words their plain and ordinary meaning, provides that judgment of $150,000 would be entered if appellants, either individually or collectively, bring a claim or complaint against respondent, "the bank."  Because the McKinnis suit was not a claim against the bank, entry of judgment was

18

improper.  Likewise, the award of attorney fees for fees expended in entering judgment was in error, respondent having had no right to the relief it sought.

**Affirmed in part and reversed in part.**