STATE OF MINNESOTA

IN SUPREME COURT

A21-1518
A21-1527
A21-1528
A21-1530

Court of Appeals                                                                    Thissen, J.
                                  Concurring in part, dissenting in part, Anderson, J.
                                              Took no part, Chutich, Procaccini, JJ.

William Findling, et al.,

        Appellants,

vs.                                                             Filed:  December 6, 2023
                                                               Office of Appellate Courts

Group Health Plan, Inc., d/b/a Health
Partners and Regions Hospital,

        Respondent (A21-1518),

Essentia Health, et al.,

        Respondents (A21-1527),

Fairview Health Services, et al.,

        Respondents (A21-1528),

Allina Health Systems,

        Respondent (A21-1530).

_____

Brandon Thompson, Barry M. Landy, Rachel L. Barrett, Jacob F. Siegel, Ciresi Conlin LLP, Minneapolis, Minnesota, for appellants.

Anthony J. Novak, Patrick H. O'Neill III, Larson King, LLP, Saint Paul, Minnesota, for respondents Group Health Plan, Inc. d/b/a Health Partners and Regions Hospital.

David A. Schooler, Gordon & Rees, Minneapolis, Minnesota; and

Andrew McCarty, Kirkland & Ellis LLP, New York, New York, for respondents Essentia Health and Innovis Health, LLC.

Gregory E. Karpenko, Anupama D. Sreekanth, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for respondents Fairview Health Services and HealthEast Care System.

Mark R. Bradford, Bradford, Andresen, Norrie & Camarotto, Bloomington, Minnesota, for respondent Allina Health System.

Keith Ellison, Attorney General, Adam Welle, Assistant Attorney General, Saint Paul, Minnesota, for amicus curiae State of Minnesota, by its Attorney General.

Patrick Stoneking, Jeff Anderson & Associates PA, Saint Paul, Minnesota, for amicus curiae Minnesota Association for Justice.

_____

## S Y L L A B U S

1.    An individual may bring a private action under the Minnesota private attorney general statute, Minn. Stat. § 8.31, subd. 3a (2022), to compel a healthcare provider to disclose that individual's medical records as required by the Minnesota Health Records Act under Minn. Stat. § 144.292, subd. 5 (2022).

2.    An individual does not have a private right of action under the Minnesota Health Care Bill of Rights, Minn. Stat. § 144.651 (2022), to compel a healthcare provider

to disclose an individual's medical records as required by the Minnesota Health Records Act under Minn. Stat. § 144.292, subd. 5.

Affirmed in part, reversed in part, and remanded.

O P I N I O N

THISSEN, Justice.

Appellants in these consolidated appeals are four individual patients (the Patients) who made written requests for medical records from their healthcare providers, the respondents in this case (the Providers). The Minnesota Health Records Act requires that, upon a patient's written request, a healthcare provider "shall furnish" a patient's medical records to the patient within 30 calendar days of receiving the written request. Minn. Stat. § 144.292, subd. 5 (2022). The Providers' responses varied, but none of them met the 30-day deadline for furnishing a complete copy of requested records.

The Patients sued the Providers under the Minnesota private attorney general statute, Minn. Stat. § 8.31, subd. 3a (2022), and the Minnesota Health Care Bill of Rights, Minn. Stat. § 144.651 (2022), alleging that the Providers had a pattern of failing to meet the 30-day deadline. The Patients sought declaratory and injunctive relief compelling the Providers to meet their statutory obligation. The district court granted the Providers' motion to dismiss, reasoning that the Patients could not bring a private right of action for a violation of section 144.292, subdivision 5, under either the private attorney general statute or the Minnesota Health Care Bill of Rights. The court of appeals affirmed.

We are asked to decide a very narrow issue: May an individual bring a private right of action under the private attorney general statute, Minn. Stat. § 8.31, subd. 3a, or the

3

Minnesota Health Care Bill of Rights, Minn. Stat. § 144.651, to compel a healthcare provider to disclose that individual's medical records within 30 days of a request for those records as required by the Minnesota Health Records Act? We hold that a patient has a private right of action under section 8.31, subdivision 3a, for the late disclosure of health records and so reverse on that issue. We agree with the district court and court of appeals, however, that the Patients do not have a private right of action under the Minnesota Health Care Bill of Rights. Accordingly, we affirm the court of appeals' dismissal of claims brought under the Minnesota Health Care Bill of Rights, reverse the court of appeals' dismissal of claims brought under the private attorney general statute, and remand to the district court for further proceedings.

## FACTS

This case comes to us following the district court's decision granting the Providers' motion to dismiss. Accordingly, we accept the allegations set forth in the Patients' complaint, as well as all inferences to be drawn from those allegations, in the light most favorable to the Patients. *Hanson v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 325 (Minn. 2019).

The Patients each alleged that they suffered serious medical complications following procedures by their Provider and suspected malpractice. Each Patient requested medical records from their Providers. The Patients allege that the individual Providers

4

failed to fully disclose their health records within the 30-day time period set forth in the Minnesota Health Records Act, Minn. Stat. § 144.292, subd. 5.[1]

The Patients each brought a lawsuit as individuals and on behalf of a putative class of similarly situated patients, seeking declaratory and injunctive relief. The Patients claim that the Providers improperly withheld their medical records and, as part of their failure to disclose the records, the Providers made false representations to the Patients to justify their non-compliance with the requests. Further, each of the Patients' complaints allege that each Provider's failure to timely disclose patient records in accordance with the Minnesota Health Records Act is a widespread, pervasive, or systematic practice.

The Patients asserted that they could sue the Providers under the private attorney general provision of Minn. Stat. § 8.31, subd. 3a, and the Minnesota Health Care Bill of Rights, Minn. Stat. § 144.651.[2] The district court disagreed and dismissed the complaints for failure to state a claim under Minn. R. Civ. P. 12.02(e). The court of appeals affirmed, concluding that "neither the private attorney general provision nor the Health Care Bill of Rights provide a private right of action to patients for underdisclosure of health records." *Findling v. Grp. Health Plan, Inc.*, 979 N.W.2d 234, 236 (Minn. App. 2022).

---

[1]    Specifically, Health Partners did not produce imaging studies related to procedures. Fairview produced incomplete treatment records, notably withholding records from the hospital at which the appellant suffered his medical problems. Allina produced some records, but not specific imaging, bills for all dates, and certain records from a specific hospital. Essentia denied the request for medical records entirely.

[2]    The Patients acknowledge that "there is no dispute that Patients do not have a private right of action for compensatory damages under section 144.298, subdivision 2 [the Health Records Act]." The Patients are not seeking damages in their lawsuits.

5

We granted review on two issues: (1) whether the Minnesota private attorney general statute, section 8.31, subdivision 3a, authorizes a civil action for a health system's violation of its obligation under the Minnesota Health Records Act to provide a patient's medical records within 30 days of a request; and (2) whether the Health Care Bill of Rights, section 144.651, creates a private right of action to enforce a health system's violation of its obligation under the Minnesota Health Records Act to provide Patients' medical records within 30 days of a request.

## ANALYSIS

### I.

We first address the Patients' claim that the Minnesota private attorney general statute, Minn. Stat. § 8.31, subd. 3a, authorizes a private right of action to compel a healthcare provider to timely disclose a patient's health records in accordance with the Minnesota Health Records Act. Whether a statute creates a private right of action under section 8.31 is a question of statutory interpretation which we review de novo. *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007).

### A.

Section 8.31 provides the Attorney General with broad enforcement authority concerning "violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn. Stat. § 8.31, subd. 1 (2022); *see also* subds. 2, 2a, 2b, 2c and 3 (2022); *see generally State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 133–34 (Minn. 2019) (noting that section 8.31, subdivision 3, "broadly authorizes the Attorney General to seek equitable relief to stop conduct that harms

6

consumers"). Section 8.31, subdivision 1, which sets forth the scope of the Attorney General's authority, provides in full:

> The attorney general shall investigate violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade, and specifically, *but not exclusively*, the Nonprofit Corporation Act (sections 317A.001 to 317A.909), the Act Against Unfair Discrimination and Competition (sections 325D.01 to 325D.07), the Unlawful Trade Practices Act (sections 325D.09 to 325D.16), the Antitrust Act (sections 325D.49 to 325D.66), section 325F.67 and other laws against false or fraudulent advertising, the antidiscrimination acts contained in section 325D.67, the act against monopolization of food products (section 325D.68), the act regulating telephone advertising services (section 325E.39), the Prevention of Consumer Fraud Act (sections 325F.68 to 325F.70), and chapter 53A regulating currency exchanges and assist in the enforcement of those laws as in this section provided.

Minn. Stat. § 8.31, subd. 1 (emphasis added). Accordingly, the Attorney General's investigatory and enforcement power reaches all laws "respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." *Id.* The list of 10 specific laws following the broad grant of authority is not exclusive. Minn. Stat. § 8.31, subd. 1; *see Morris v. Am. Fam. Mut. Ins. Co.*, 386 N.W.2d 233, 236 (Minn. 1986) ("[T]he list of laws set out in subdivision 1 is not intended to be exclusive.").[3]

---

[3] We have, for example, recognized that the Attorney General has the authority to enforce public-protection laws under section 8.31 that fall outside of those laws specifically enumerated under section 8.31, subdivision 1. Thus, we upheld an injunctive action by the Attorney General concerning violations of Minnesota's anti-usury law (Minn. Stat. ch. 334) and Regulated Loan Act (Minn. Stat. ch. 56). *State v. Minn. Sch. of Bus., Inc.*, 899 N.W.2d 467, 470 (Minn. 2017). Subdivision 1 does not specifically name either of these acts; however, we noted that "[t]he Attorney General is 'entitled' to a statutory injunction for 'violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade.' " *Id.* at 471 (quoting Minn. Stat. 8.31, subds. 1, 3).

Subdivision 3a states:

> In addition to the remedies otherwise provided by law, *any person injured by a violation of any of the laws referred to in subdivision 1* may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

Minn. Stat. § 8.31, subd. 3a (emphasis added). The plain language of section 8.31, subdivisions 1 and 3a, tells us that the set of laws for which an individual can bring a private action under subdivision 3a aligns with the set of laws that the Attorney General is empowered to investigate and enforce under section 8.31.[4] The question before us, then, is whether section 144.292, subdivision 5, of the Minnesota Health Records Act is a law respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade that the Attorney General may investigate and enforce. We conclude that it is.

Minnesotans rely on and pay healthcare providers to provide them necessary and sometimes critical healthcare services, often at times when those Minnesotans are most vulnerable and have no other choice but to seek medical care. Further, the relationship between healthcare providers and patients is not one of equals because the providers have knowledge and expertise that ordinary individuals lack. And patients must share intimate and private information with their healthcare provider as part of seeking treatment. A

---

[4] The remedies available to the Attorney General are broader than the remedies available to an individual bringing suit under section 8.31. *Minn. Sch. of Bus., Inc.*, 935 N.W.2d at 133 (citing *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 899 (Minn. 2012)). The Patients in this case seek remedies that fall within the scope of private actions under section 8.31, subdivision 3a.

8

healthcare provider's control over those highly personal health records—which collectively have economic and other value—creates the potential for abuse.

The Minnesota Health Records Act regulates the relationship between patients and healthcare providers to level the playing field between the two regarding healthcare records. Healthcare records often are the sole documentation of the providers' provision of healthcare services and, consequently, patients' ability to timely access healthcare records is crucial to patients' autonomy over their medical care. The statute limits to whom, under what circumstances, and for what purpose the healthcare provider may share healthcare records with other persons and entities,[5] and it provides patients with various rights to access their own healthcare records. Minn. Stat. § 144.292 (2022). In particular, as relevant to this appeal, section 144.292, subdivision 5, provides the patient a right to timely disclosure of healthcare records upon written request:

> [U]pon a patient's written request, a provider, at a reasonable cost to the patient, shall furnish to the patient within 30 calendar days of receiving a written request for medical records: (1) copies of the patient's health record, including but not limited to laboratory reports, x-rays, prescriptions, and other technical information used in assessing the patient's health conditions.

Minn. Stat. § 144.292, subd. 5.[6]

The Minnesota Health Records Act provision governing disclosure of, and patient access to, healthcare records is a law prohibiting unfair practices in trade, business, or

---

[5]    *See, e.g.*, Minn. Stat. § 144.293 (2022) (release and disclosure of health records); Minn. Stat. § 144.294 (2022) (disclosure of mental health records); Minn. Stat. § 144.295 (2022) (disclosure of health records for external research).

[6]    The statute involves a nuanced balancing of the interests of patients and providers and includes exceptions to disclosure which are not relevant to the resolution of this appeal.

9

commerce and thus falls within the scope of those laws that the Attorney General may investigate and enforce pursuant to section 8.31. The parties do not dispute that the provision of healthcare constitutes "trade, business, or commerce" and we agree with that conclusion.

One definition of "unfair" that is core to section 8.31 is "[i]nequitable in business dealings." *Unfair*, *Black's Law Dictionary* (11th ed. 2019); *see State v. Johnson*, 995 N.W.2d 155, 160 (Minn. 2023) (stating that "we may look to dictionary definitions to determine the common and ordinary meanings of these terms" and "[i]n determining which dictionary definitions apply, we consider the statutory context" (citations omitted) (internal quotation marks omitted)); *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 760 (Minn. 2013) (Anderson, J., dissenting) (stating that we may use dictionary definitions to help us understand the meaning of a word if applying that definition makes sense in context). The statutory context makes it clear that the point of the patient's rights provisions in section 144.292 is precisely to balance the equities between vulnerable patients who rely on providers for necessary services—and who must provide personal and private healthcare information to do so—and the knowledgeable and expert providers and systems who need the records to properly provide and memorialize those services. If a provider shares a patient's private information with others not entitled to see it or fails, after a request, to provide patients with their information in a timely manner, the provider abuses its power over the patients and their information, acting inequitably and unfairly. Thus, the Patients' allegations that the Providers did not furnish their records within 30 days and that the Providers, as a practice, systematically failed to timely provide health

records within the 30-day time period, stated a claim that the Providers violated a law of this state respecting unfair practices in business, commerce, or trade.

Moreover, section 8.31, subdivisions 1 and 3a, authorize the Attorney General to investigate, and a private party to bring a civil action when injured by, violations of laws respecting not only unfair and discriminatory business, commerce, or trade practices but also "other unlawful practices in business, commerce, or trade." Failure to timely provide the records is an unlawful practice: it violates the affirmative legal obligation placed on a healthcare provider. Thus, the failure of the Providers in this case to comply with the timely disclosure requirements of the Minnesota Health Records Act is an "unlawful practice[] in business, commerce, or trade" under section 8.31, subdivision 1.

Accordingly, the Patients are persons injured by a violation of the laws referred to in section 8.31, subdivision 1. Therefore, they may bring a private action for equitable relief, including declaratory and injunctive relief, to require the Providers to comply with their timely disclosure obligations under the Minnesota Health Records Act. *See* Minn. Stat. § 8.31, subd. 3a.

### B.

The Providers disagree with this conclusion and advance an alternative interpretation of the statute.[7] First, the Providers contend that the scope of the Attorney

---

[7] The Providers also argue that the legislative history of section 8.31 supports its argument. Because we conclude that section 8.31 is not ambiguous, we decline to look to the statute's legislative history. *See Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 169 (Minn. 2021) (noting that the first step of statutory interpretation is to "determine whether the statute's language, on its face, is ambiguous").

General's investigative and enforcement authority defined in section 8.31, subdivision 1, is "center[ed] on matters of fraud." To support this position, they assert that all the specific statutes listed in section 8.31, subdivision 1, relate to fraudulent practices.

We conclude that this argument is counter to the language and the substance of section 8.31, subdivision 1. First, the words fraud or fraudulent are not used to qualify or limit the broad general description of the laws that the Attorney General may investigate and enforce under section 8.31: "law[s] of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn. Stat. § 8.31, subd. 1. If the Legislature intended to limit the set of laws that the Attorney General may investigate and enforce under section 8.31 to those involving fraud, it would have been simple to say that. *See Buzzell v. Walz*, 974 N.W.2d 256, 265 (Minn. 2022) (rejecting a statutory interpretation argument on the basis that, had the Legislature intended a particular meaning, it would have chosen a more direct textual path). Second, the list of specific statutes is expressly non-exclusive and does not limit the scope of the broad grant of authority to the Attorney General to the type of statutes listed. Third, we note that narrowing the scope of section 8.31, subdivision 1, to matters relating to fraud for purposes of private actions under subdivision 3a would also necessarily narrow the investigatory and enforcement power of the Attorney General. We do not see any indication in the text of the statute that the Legislature intended such a result.

Moreover, the Providers' argument that all the specific statutes in section 8.31, subdivision 1, are "centered on fraud" is factually incorrect. For example, section 8.31,

subdivision 1, specifically cites to section 325E.39, which is focused on telephone advertising services. It states, in its entirety:

> Subdivision 1. Definition.
> For purposes of this section, "telephone advertising service" means a service that enables advertisers to make recorded personal or other advertisements available to respondents by means of voice mail or another messaging device accessed by telephone. "Telephone advertising service" does not mean advertisements for telephone services or a newspaper or other medium of mass communication that publishes an advertisement for a telephone advertising service.
>
> Subdivision 2. Verification and identification.
> A person who operates a telephone advertising service in this state shall:
> (1) verify the placement of an advertisement that includes the advertiser's telephone number or other information that enables respondents to identify and communicate directly with the advertiser by calling the listed number or otherwise communicating with the person identified as the advertiser to ensure that the person placed or consented to the placement of the advertisement; and
> (2) in any advertising for the telephone advertising service, provide a business mailing address or business telephone number sufficient to enable persons to communicate with the business operation of the service.

Minn. Stat. § 325E.39 (2022). This regulatory statute requires certain information be included in advertisements but does not require a showing of fraud before a violation exists.[8] For all these reasons, we disagree with the Providers' assertion that private rights of action under section 8.31, subdivision 3a, are limited to violations of laws centered on fraud.

---

[8] Similarly, neither the antidiscrimination act in section 325D.67 (making unfair price discrimination of petroleum unlawful) nor the monopolization of food products in section 325D.68 require a showing of fraud.

13

Next, the Providers contend that the phrase "other unlawful practices" is limited to laws that seek to regulate conduct related to the "unfair" or "discriminatory" practices described in section 8.31, subdivision 1. This argument does not get the Providers very far based on our conclusion that section 144.292, subdivision 5, is a law regulating *unfair* practices in trade, business, or commerce. Thus, even if the phrase "other unlawful practices" is limited to unfair or discriminatory practices as the Providers claim, the failure to timely furnish healthcare records to a patient upon request falls within the category of laws—laws related to unfair practices—specifically identified in section 8.31, subdivision 1.

In any event, we do not agree that the phrase "other unlawful practices" is limited to practices that are unfair or discriminatory. The Providers assert that the *ejusdem generis* canon compels that reading of the statutory language. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012) (explaining that the *ejusdem generis* canon states that when a general "catchall" phrase follows a list of two or more specific examples, the general phrase is read to be limited "only to persons or things of the same general kind or class specifically mentioned"). But we do not find that the *ejusdem generis* canon is helpful in this case.

The canon properly applies where the specific items in a list share a characteristic that unites the specific items in a particular category and the category is broader than (includes items other than) the specific items mentioned in the list. The Providers do not identify the characteristic that unites the concepts of terms "unfair" and "discriminatory" nor do they identify the other types of laws that fit that shared characteristic but that are

14

not unfair or discriminatory.[9]  Rather, the Providers apply the canon to simply say that "unlawful practices" means "unfair" or "discriminatory" practices; an interpretation that reads the words "other unlawful activities" out of the statute in direct contravention of another, and in this case more useful, canon of construction—that against surplusage. *See State v. Thonesavanh*, 904 N.W.2d 432, 437 (Minn. 2017) (explaining that the rule against surplusage "favors giving each word or phrase in a statute a distinct, not an identical, meaning").

The Providers also assert that a broad interpretation of "other unlawful practices" runs afoul of the surplusage canon.  They reason that a broad interpretation of "other unlawful practices" would swallow the terms "unfair practices" and "discriminatory practices."  Even if that is true, it is not clear how the argument helps the Providers.  The canon does not give us any guidance on what meaning we should give to the phrase "other unlawful practices" that is both less broad than a meaning that would cover the timely disclosure provision of the Minnesota Health Records Act and that is different than unfair or discriminatory practices.

---

[9]    Even if we had concluded that section 144.292, subdivision 5, was not a law regulating unfair practices, we conclude that proper application of the *ejusdem generis* canon would suggest that section 144.292, subdivision 5, is an unlawful practice sufficiently like more traditional unfair or discriminatory practices to fall within the scope of section 8.31, subdivision 1.  A significant characteristic that unites unfair practices and discriminatory practices is that such practices allow some participants in the marketplace the ability to take advantage of others in the marketplace based on their position of power.  The Minnesota Health Records Act in general and section 144.292, subdivision 5, in particular, protects patients against misuse by providers of the information contained in healthcare records; personal and private information that the patient must provide to access necessary and often critical services.

The Providers further contend that the Minnesota Health Records Act itself implicitly provides that patients are precluded from bringing a private action under section 8.31, subdivision 3a, for a violation of the Minnesota Health Records Act. They point out that the Minnesota Health Records Act expressly creates a private cause of action for damages for specific provider conduct prohibited under the statute. Under Minn. Stat. § 144.298, subd. 2 (2022):

> A person who does any of the following is liable to the patient for compensatory damages caused by an unauthorized release or an intentional, unauthorized access, plus costs and reasonable attorney fees:
> (1) negligently or intentionally requests or releases a health record in violation of sections 144.291 to 144.297;
> (2) forges a signature on a consent form or materially alters the consent form of another person without the person's consent;
> (3) obtains a consent form or the health records of another person under false pretenses; or
> (4) intentionally violates sections 144.291 to 144.297 by intentionally accessing a record locator or patient information service without authorization.

Failure to timely disclose a healthcare record under section 144.292, subdivision 5, is not one of the acts described in section 144.298, subdivision 2. Violations of other obligations of the Minnesota Health Records Act "may be grounds for disciplinary action against a provider by the appropriate licensing board or agency." Minn. Stat. § 144.298, subd. 1 (2022). The Providers argue that these remedy provisions in the Minnesota Health Records Act are exclusive and, consequently, preclude a patient harmed by a violation of the Minnesota Health Records Act from proceeding with an action under section 8.31, subdivision 3a.

We do not agree. Critically, the Minnesota Health Records Act does not specifically state that section 8.31, subdivision 3a, does *not* apply to systematic practices that violate the statute. This is important for two reasons. First, section 8.31, subdivision 3a—the statute we are concerned with here—expressly states that it applies "[i]n addition to the remedies otherwise provided by law." Minn. Stat. § 8.31, subd. 3a. That language plainly tells us that the fact that another statute provided a different remedy for the same legal violation does not preclude an individual harmed by the legal violation from also proceeding under section 8.31, subdivision 3a.

Second, the remedy provided in section 144.298 is compensation for the harm suffered by an individual due to violations of the specific provisions of the Minnesota Health Records Act. Section 8.31, subdivision 3a, in contrast, provides both compensatory damages remedies *and* equitable remedies (like an injunction) for *systematic practices* that violate the Minnesota Health Records Act and affect more than just the individual bringing the claim. The statutes provide different remedies that serve different purposes. Essentially, a person who brings a claim under section 8.31, subdivision 3a, is stepping into the shoes of the Attorney General and seeking relief on behalf of the broader public. *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000) (holding that plaintiffs who bring claims under the private attorney general statute must also "demonstrate that their cause of action benefits the public").[10] We refuse to read into section 144.298 implicit exclusive

---

[10] Due to the procedural posture of this case, the question of whether the Patients' complaints benefit the public is not before us. Of course, the Patients will ultimately have to prove a public benefit to obtain the relief they seek under section 8.31, subdivision 3a. As the concurrence and dissent notes, this is an important limitation on the ability of private

remedy language so as to preclude a private individual from obtaining relief on behalf of the public against systemic practices of healthcare providers that violate the Minnesota Health Records Act.[11]

Finally, the Providers contend that our decision in *Morris v. American Family Mutual Insurance Co.*, 386 N.W.2d 233 (Minn. 1986), compels that we read section 8.31, subdivision 3a, more narrowly than the plain language indicates. Again, we disagree.

In *Morris*, the court evaluated whether an individual could bring a claim under section 8.31, subdivision 3a, for violations of the Unfair Claims Practices Act, Minn.

---

litigants to sue under section 8.31 for violations of Minnesota law. The floodgates will not open as a result of this decision; rather, litigants in Minnesota will simply continue to use the statutory mechanisms that have been available for decades. We are also not concerned that plaintiffs will allege in bad faith systematic violations of law simply to avoid the public benefit rule. Lawyers cannot plead allegations that are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and "allegations and other factual contentions [must] have evidentiary support." Minn. R. Civ. P. 11.02(b) and (c). We assume lawyers in Minnesota are acting ethically.

[11]     For this reason, we do not find *Larson v. Northwestern Mutual Life Insurance Co.*, 855 N.W.2d 293, 296 (Minn. 2014), to be relevant. *Larson* arose when an insurer denied life insurance benefits to its insured based on the insured's failure to disclose all healthcare records when purchasing the insurance. *Id.* The records were not disclosed despite the fact that insured signed a comprehensive consent to release form because the medical records contractor for the insured's provider failed to release all of the records to the insurer. *Id.* The insured sued the medical records contractor seeking damages for the incomplete disclosure of the health records under section 144.298, subdivision 2, of the Minnesota Health Records Act. *Id.* at 301. We held that section 144.298, subdivision 2, did not create a private right of action for the under-disclosure of healthcare records. *Id.* at 302. Critically, we did not address the entirely separate question—the one before us in this case—of whether the insured could have brought a private action under section 8.31, subdivision 3a.

Stat. ch. 72A (1984).[12]  *Morris*, 386 N.W.2d at 234.  Importantly, the plaintiff in *Morris* claimed that the insurer violated *her* rights as an individual; she did not allege that the insurer's conduct related to her was a widespread practice by the insurer.  *Id.*  The Unfair Claims Practices Act was not specifically listed in section 8.31, subdivision 1.  *Id.* at 235.  But we acknowledged that its absence did not mean that chapter 72A was not within the scope of section 8.31, subdivision 1, reasoning that subdivision 1 says that the list of statutes is not exclusive, and, further, "section 72A.20 deals with unfair business practices of insurers."  *Id.* at 235–36.

Nevertheless, we stated that "it is uncertain whether *Chapter 72A* was ever contemplated by the legislature as subject to the private civil action provision of section 8.31, subd. 3a" due to the unique history of the interrelation between chapter 72A and section 8.31.  *Id.* at 236 (emphasis added).  We noted that before 1983, section 8.31 specifically provided that violations of chapter 72A were not subject to enforcement by either the Attorney General or a private individual under section 8.31.  *Id.*; Minn. Stat. § 8.31, subd. 4 (1984) (repealed in 1983 by Act of June 7, 1983, ch. 290, § 173, 1983 Minn. Laws 1405 and Act of June 8, 1983, ch. 301, § 235, 1983 Minn. Laws 1718).  We recognized that in 1983, the Legislature eliminated subdivision 4, thereby providing the Attorney General with the authority to investigate violations of, and enforce the provisions of, chapter 72A as an unfair, discriminatory, or other unlawful *practice* in business, commerce, or trade.  *Morris*, 386 N.W.2d at 236.

---

[12]    The Unfair Claims Practices Act regulates the "making, issuing, delivering, or tendering any policy of insurance of any kind."  Minn. Stat. § 72A.02 (1984).

We also observed, however, that the following year (but before the *Morris* lawsuit was filed) the Legislature amended chapter 72A to add language stating that " '[n]o *individual violation* [of the Unfair Claims Practices Act] constitutes an unfair, discriminatory, or unlawful practice in business, commerce, or trade for purposes of section 8.31.' " Act of Apr. 25, 1984, ch. 555, § 3, 1983 Minn. Laws 999, 1001[13] (codified at Minn. Stat. § 72A.20 (1984)) (emphasis added). The entire provision added in 1984 stated:

> The commissioner may, in accordance chapter 14, adopt rules to insure the prompt, fair, and honest processing of claims and complaints. The commissioner may, in accordance with sections 72A.22 to 72A.25, seek and impose appropriate administrative remedies, including fines, for (1) a violation of this subdivision or the rules adopted pursuant to this subdivision; or (2) a violation of section 72A.20, subdivision 12. The commissioner need not show a general business practice in taking an administrative action for these violations.

> No individual violation constitutes an unfair, discriminatory, or unlawful practice in business, commerce, or trade for purposes of section 8.31.

Minn. Stat. § 72A.20, subd. 12a (1984). In other words, following the 1984 amendment, Minnesota statutes authorized the Commerce Commissioner to take administrative action against insurers where the violation only affected a single individual (i.e., the Commerce Commissioner did not need to show the violation was a business practice of the insurer), but the 1984 amendment prohibited both the Attorney General and individual litigants from bringing claims for a violation of the statute where only one individual was

---

[13] The language was initially added as subdivision 12a to Minn. Stat. § 72A.20. *See* Minn. Stat. § 72A.20 (1984). The same language is now found in Minn. Stat. § 72A.201, subd. 1 (2022).

affected—precisely the type of claim that Morris brought. Characterizing this set of changes to the statutory texts as "at best delphic," *Morris*, 386 N.W.2d at 236, we reasoned that the amended language of section 8.31 and 72A.20 did not explicitly create a cause of action.

We were also swayed by the fact that Minnesota common law (1) prevented an injured third-party claimant from directly suing the insurer of the person that injured the third-party claimant; and (2) did not allow conversion of a bad faith breach of contract claim into a tort and, consequently, a first party insured cannot recover punitive damages in a breach of contract action against her insurer in the absence of some independent tort. *Id.* at 237. We concluded that allowing a private plaintiff to bring a claim for individual harm resulting in violation of chapter 72A under section 8.31, subdivision 3a, would undermine those common law tort principles. *Id.* Applying the canon against abrogation of the common law, we held that had the Legislature intended to make such a fundamental change to the common law, it had to do so more explicitly than it did. *Id.* at 237–38.

*Morris* does not control the outcome of this case. The confluence of unique historical factors that influenced our decision in *Morris* do not exist here: the Minnesota Health Records Act was never excluded from the scope of section 8.31, section 8.31 is not expressly referenced in the Minnesota Health Records Act the same way it is referenced in section 72A.20, and including section 144.292, subdivision 5, would not work fundamental change to Minnesota's common law. Equally important, *Morris* was decided a decade and a half before we held in *Ly* that section 8.31, subdivision 3a, applies only to claimants who demonstrate that their cause of action benefits the public and does not allow

claims based on violations of law that only impact a single individual.  *See Ly*, 615 N.W.2d at 314.  Had that been the law in 1984 when we decided *Morris*, many of our concerns (originating in part from the language in section 72A.20, subdivision 12(a) (1984)) about giving individuals a right to bring a claim under section 8.31 to vindicate the individual rights affected by a single, stand-alone violation of chapter 72A would have been minimized or eliminated.  *See Morris*, 386 N.W.2d at 237 (reasoning that "Chapter 72A's comprehensive scheme of administrative enforcement would seem more appropriate to investigating and regulating an insurer's general business practices").  We see nothing in *Morris* that convinces us to ignore the plain language of section 8.31 in this case.

C.

Finally, the Providers claim that the Patients cannot bring their claims under section 8.31 because they "cannot establish that their individual disputes meet the public-benefit requirement."  *See Ly*, 615 N.W.2d at 314 (holding that claims brought under the private attorney general statute must "benefit[] the public").  They also argue that the failure to timely disclose records under the Minnesota Health Records Act is not a "practice."  Neither the district court nor the court of appeals addressed these questions, and we decline to do so in the first instance.  Our general holding that an individual may bring a private action under the Minnesota private attorney general statute, Minn. Stat. § 8.31, subd. 3a, to compel the disclosure of health records as required by the Minnesota Health Records Act under Minn. Stat. § 144.292, subd. 5, leaves these questions to the district court and we express no opinion on them.

II.

The Patients also argue that Minn. Stat. § 144.651, the Minnesota Health Care Bill of Rights (also referred to as the Minnesota Patients' Bill of Rights), establishes a civil cause of action to compel disclosure of a patient's healthcare records. The Patients correctly note that section 144.651 requires that "[c]opies of records and written information from the records shall be made available in accordance with this subdivision and sections 144.291 to 144.298." Minn. Stat. § 144.651, subd. 16. Accordingly, a healthcare provider's failure to furnish patients with their records within 30 days after a request in violation of section 144.292, subdivision 5, is also a violation of the Minnesota Health Care Bill of Rights.[14]

But the Minnesota Health Care Bill of Rights does not have a single provision that expressly authorizes a patient whose rights are violated to sue the provider to enforce the patient rights set forth in the statute. The Patients argue, however, that a combination of statutory language in Minn. Stat. §§ 144.651, subd. 1, and 144.652, subd. 2 (2022), together expressly create a private right of action to sue to enforce patient rights including the right to obtain timely disclosure of healthcare records. Whether that assertion is correct is a question of statutory interpretation where some special rules apply. We have recognized that "[a] statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Becker*, 737 N.W.2d

---

[14] The Providers do not contest on appeal that they are subject to the Health Care Bill of Rights.

23

at 207. With these principles in mind, we analyze whether the Minnesota Health Care Bill of Rights expressly provides or clearly implies a civil cause of action.

## A.

We first address the Patients' claim that section 144.651 expressly authorized a private right of action to enforce the patient rights listed in the statute.

Many Minnesota statutes include a provision that expressly creates a private right of action to enforce the rights set forth in the statute. *Cf.* Minn. Stat. § 144.298, subd. 2 ("A person who does any of the following is liable to the patient for compensatory damages caused by an unauthorized release or an intentional, unauthorized access, plus costs and reasonable attorney fees . . . ."); Minn. Stat. § 58.18, subd. 1 (2022) ("A borrower injured by a violation . . . shall have a private right of action . . . ."); Minn. Stat. § 559.202, subd. 5 (2022) ("[A] purchaser has a private right of action against a multiple seller who fails to timely deliver the notice required . . . ."). That is what we typically consider an express provision that gives rise to a civil cause of action. In contrast the Minnesota Health Care Bill of Rights does not have a single provision that expressly authorizes a patient whose rights are violated to sue the provider to enforce the patient rights set forth in the statute. The Patients argue, however, that the statute expressly creates a private right of action because section 144.651, subdivision 1, allows an interested person (which, Patients argue, includes the patient) to seek enforcement of their rights under statute and that section 144.652, subdivision 2, recognizes that one way of enforcing those rights is by "private action." We will examine each proposition but start by observing that the fact that the Patients must cobble together an "express" statement from different statutory

provisions, neither of which directly makes an express statement creating a private right of action, is one strong indication that the Legislature did not *expressly* provide a cause of action.

We turn first to section 144.651, subdivision 1, which provides:

It is the intent of the legislature and the purpose of this section to promote the interests and well being of the patients and residents of health care facilities. No health care facility may require a patient or resident to waive these rights as a condition of admission to the facility. Any guardian or conservator of a patient or resident or, in the absence of a guardian or conservator, *an interested person, may seek enforcement of these rights on behalf of a patient or resident*. An interested person may also seek enforcement of these rights on behalf of a patient or resident who has a guardian or conservator through administrative agencies or in district court having jurisdiction over guardianships and conservatorships. Pending the outcome of an enforcement proceeding the health care facility may, in good faith, comply with the instructions of a guardian or conservator. It is the intent of this section that every patient's civil and religious liberties, including the right to independent personal decisions and knowledge of available choices, shall not be infringed and that the facility shall encourage and assist in the fullest possible exercise of these rights.

Minn. Stat. § 144.651, subd. 1 (emphasis added).

We agree with the court of appeals that the highlighted segment of the provision does not give a broad right to every patient to file a lawsuit to enforce the rights set forth in section 144.651. *Findling*, 979 N.W.2d at 243. The statute does not say, as the Patients contend, that every "interested person . . . may seek enforcement of these rights on behalf of a patient or resident" in all contexts, even if they are entirely competent and not in need of a guardian or conservator. The Patients' reading is strained and impermissibly divorced from the context in which we find the phrase upon which they base their argument. *Christiansen v. Hennepin Transp. Co.*, 10 N.W.2d 406, 415 (Minn. 1943) (stating that

25

when interpreting a statutory provision "[w]ords and sentences are to be understood in no abstract sense, but in the light of their context, which communicates meaning and color to every part"); s*ee Thompson v. St. Anthony Leased Hous. Assocs. II, L.P.*, 979 N.W.2d 1, 16 (Minn. 2022) (Thissen, J., dissenting) (stating that a piecemeal approach, which plucks a few words out of a statutory phrase is "methodologically and practically problematic").

The structure of the sentence demonstrates the error in the Patients' argument. The sentence upon which the Patients rely states, in full, that, "Any guardian or conservator of a patient or resident or, in the absence of a guardian or conservator, an interested person, may seek enforcement of these rights on behalf of a patient or resident." The primary gist of the sentence is to authorize a "guardian or conservator of a patient or resident" to "seek enforcement of these rights on behalf of a patient or resident." Minn. Stat. § 144.651, subdivision 1. The sentence clarifies that, when a conservator or a guardian is appointed for a patient, the healthcare provider must respect the position and directives of the guardian or conservator as the spokesperson for the patient regarding the patient's rights.

Embedded in that sentence is a qualifying phrase that clarifies that "*in the absence of a guardian or conservator, an interested person*, may seek enforcement of these rights on behalf of a patient or resident." *Id.* (emphasis added). Accordingly, read in light of the entire sentence, the authority of an "interested person" to assert rights only applies by its terms when a guardian or conservator may otherwise have been, but has not been, appointed. And that interpretation makes sense. The qualifying phrase further clarifies for providers that they should respect the directives of an appropriate interested person when

26

that person speaks on behalf of patients who may lack the capacity to make decisions and advocate for themselves and who do not have an appointed guardian or conservator.[15]

This interpretation is bolstered by the next sentence: "An interested person may also seek enforcement of these rights *on behalf of* a patient or resident who has a guardian or conservator through administrative agencies or in district court having jurisdiction over guardianships and conservatorships."  Minn. Stat. § 144.651, subd. 1 (emphasis added). By stating that the interested person is acting "on behalf of a patient or resident who has a guardian or conservator," the language confirms that it is limited to the context of guardianships and conservatorships. *Id.*  The language allows an interested person to enlist agency or district court assistance to direct a guardian or conservator to take steps to enforce the rights of a patient under guardianship or conservatorship.  In other words, the issue before the district court under this provision is whether the guardian or conservator is properly advocating for the patient's rights; it is not about determining whether the provider in fact violated those rights.  *Cf.* Minn. Stat. § 524.5-316(c) (2022) (authorizing "[a] person subject to guardianship or interested person of record with the court [to] . . . petition the court for an order that is in the best interests of the person subject to guardianship or for other appropriate relief") and § 524.5-420(e) (2022) (authorizing "[a] person subject to conservatorship or an interested person of record with the court

---

[15]    In their briefs, the parties vigorously debate whether a patient may be an "interested person" for purposes of section 144.651, subdivision 1.  Based on our resolution of the matter, we need not and do not resolve that question.

27

[to] . . . petition the court for any order that is in the best interests of the person subject to conservatorship and the estate or for other appropriate relief").

None of the Patients allege that they are subject to the appointment of a guardian or conservator. The language upon which they rely in section 144.651, subdivision 1, does not create a right to enforce their rights as patients through a private action in district court.

Indeed, if the Legislature intended to give a broad right to *every* patient to file a lawsuit to enforce the rights set forth in section 144.651, one would not have expected them to use such circuitous language buried in a provision about guardians and conservators. *Buzzell*, 974 N.W.2d at 265 (stating that "had the Legislature intended to fill a constitutional gap . . . we would expect that, rather than trying to squeeze an entire compensation scheme for regulatory takings otherwise excepted for public health and safety into the single word 'commandeer,' the Legislature would have taken a much more direct path to do so"). Rather, the Legislature would simply have stated that "patients may seek enforcement of these rights."

We now turn to the other part of the Patients' two-part argument that the Minnesota Health Care Bill of Rights expressly creates a private right of action to enforce the rights set forth in the statute. We conclude that even if the language in section 144.651, subdivision 1, which we just discussed, allows patients to seek enforcement of their rights under the statute, it does not follow that enforcement may take the form of a lawsuit. Certainly, the phrase used in section 144.651, subdivision 1—"may seek enforcement of these rights"—does not state that enforcement of those rights may take the form of a private lawsuit.

In fact, the Minnesota Health Care Bill of Rights expressly provides other, non-lawsuit, mechanisms for enforcing patient rights. For instance, the Minnesota Health Care Bill of Rights mandates that facilities covered by the Act adopt an internal grievance procedure, and it states that "[p]atients and residents" may be involved in voicing grievances to exercise their rights.[16] Minn. Stat. § 144.651, subd. 20. The statute requires facilities to assist patients and residents in exercising their rights by mandating that "[n]otice of the grievance procedure of the facility or program, as well as addresses and telephone numbers for the Office of Health Facility Complaints and the area nursing home

---

[16]     Subdivision 20 of Minn. Stat. § 144.651 is as follows:

> Patients and residents shall be encouraged and assisted, throughout their stay in a facility or their course of treatment, to understand and exercise their rights as patients, residents, and citizens. Patients and residents may voice grievances and recommend changes in policies and services to facility staff and others of their choice, free from restraint, interference, coercion, discrimination, or reprisal, including threat of discharge. Notice of the grievance procedure of the facility or program, as well as addresses and telephone numbers for the Office of Health Facility Complaints and the area nursing home ombudsman pursuant to the Older Americans Act, section 307(a)(12) shall be posted in a conspicuous place.
>
> Every acute care inpatient facility, every residential program as defined in section 253C.01, every nonacute care facility, and every facility employing more than two people that provides outpatient mental health services shall have a written internal grievance procedure that, at a minimum, sets forth the process to be followed; specifies time limits, including time limits for facility response; provides for the patient or resident to have the assistance of an advocate; requires a written response to written grievances; and provides for a timely decision by an impartial decision maker if the grievance is not otherwise resolved. Compliance by hospitals, residential programs as defined in section 253C.01 which are hospital-based primary treatment programs, and outpatient surgery centers with section 144.691 and compliance by health maintenance organizations with section 62D.11 is deemed to be compliance with the requirement for a written internal grievance procedure.

ombudsman pursuant to the Older Americans Act, section 307(a)(12) shall be posted in a conspicuous place." *Id.*

Moreover, when there is "[a] substantial violation of the rights of any patient or resident as defined in section 144.651," section 144.652 provides that Patients may seek to enforce rights through a correction order issued by the Department of Health. Minn. Stat. § 144.652, subd. 2.[17] The inclusion of these specific methods of enforcing patients' rights set forth in the Minnesota Health Care Bill of Rights tells us that the language "may seek enforcement" in section 144.651, subdivision 1, does not explicitly create a private right to sue the healthcare provider to enforce the rights.

The Patients, however, assert that section 144.652, subdivision 2, recognizes that *one* way a patient (as an "interested person") may enforce the rights set forth in the statute is by "private action." Section 144.652, subdivision 2, provides in full:

---

[17]     Minnesota Statutes section 144.653, subdivision 3 (2022), entitled "Enforcement," provides that "the state commissioner of health is the exclusive state agency charged with the responsibility and duty of inspecting facilities required to be licensed under the provisions of sections 144.50 to 144.58 and enforcing the rules and standards prescribed by it." Minnesota Statutes section 144A.10 (2022), also designates the Commissioner of Health as the "exclusive state agency" overseeing nursing homes. *Id.*, subd. 1. Section 144A.10 provides for a correction order process, which requires the Commissioner of Health to issue a correction order when a "facility is not in compliance" with various laws, including the Minnesota Health Care Bill of Rights. *Id.*, subd. 4. The Commissioner is required to "state the deficiency, cite the specific rule or statute violated, state the suggested method of correction, and specify the time allowed for correction." *Id.* Put another way, the state Commissioner of Health is the exclusive state agency overseeing healthcare and nursing home facilities, which are required to provide an internal grievance procedure, and the Minnesota Health Care Bill of Rights anticipates enforcement by means of correction orders issued by the state Commissioner of Health. Thus, the Minnesota Health Care Bill of Rights has a scheme of administrative enforcement to oversee the rights listed in the Minnesota Health Care Bill of Rights.

**Correction order; emergencies**. A substantial violation of the rights of any patient or resident as defined in section 144.651, shall be grounds for issuance of a correction order pursuant to section 144.653 or 144A.10. *The issuance or nonissuance of a correction order shall not preclude, diminish, enlarge, or otherwise alter private action by or on behalf of a patient or resident to enforce any unreasonable violation of the patient's or resident's rights.* Compliance with the provisions of section 144.651 shall not be required whenever emergency conditions, as documented by the attending physician, advanced practice registered nurse, or physician assistant in a patient's medical record or a resident's care record, indicate immediate medical treatment, including but not limited to surgical procedures, is necessary and it is impossible or impractical to comply with the provisions of section 144.651 because delay would endanger the patient's or resident's life, health, or safety.

Minn. Stat. § 144.652, subd. 2 (emphasis added). The Patients claim that this single reference to a private action by a patient to enforce a violation of a patient's rights means that such a private right of action must exist *under the Minnesota Health Care Bill of Rights*.

Contrary to the Patients' position, this language does not expressly state that a patient has the right to bring a private action under the Minnesota Health Care Bill of Rights. It merely says that, to the extent that the patient may bring an action to enforce the Patients' rights under some theory (for instance, a claim sounding in tort or breach of contract or under section 8.31), the state Commissioner of Health's decision to issue or not issue a corrective order does not affect that private right.[18] In other words, the language does not affirmatively establish a private right of action to sue for violations of the statute;

---

[18] A private action to address an unreasonable violation of the patient's rights could arise under tort or contract law as the court of appeals noted. *Findling*, 979 N.W.2d at 243. But for purposes of resolving this case we need not limit the basis for such a private action to tort and contract actions.

31

instead, it merely clarifies that to the extent that such a right exists under some other legal authority, a corrective order decision does not affect that right.

In conclusion, the Minnesota Health Care Bill of Rights does not explicitly provide a civil cause of action to enforce the provisions of the Minnesota Health Care Bill of Rights.

B.

The Patients alternatively argue that the Minnesota Health Care Bill of Rights gives rise to a private cause of action by clear implication. We have cautioned, however, that "[w]e are generally reluctant to recognize causes of action when the language of the statute does not expressly provide one." *Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 504 (Minn. 2021) (citation omitted) (internal quotation marks omitted). Based on our review of the statutory language in the Minnesota Health Care Bill of Rights, we perceive little support for the conclusion that the Legislature implicitly intended to create a private right of action for individuals claiming violations of their rights set forth in the statute. *See Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 691 (Minn. 2014) ("In determining whether a private cause of action is clearly implied, we look to the language of the statute in question and its related sections.").

One textual indicator that the Legislature did not intend to create a private cause of action is that the Minnesota Health Care Bill of Rights provides alternative mechanisms—other than a private lawsuit by a patient against a provider—to uphold the statute's goals of protecting patient rights. *See* Minn. Stat. §§ 144.651, subd. 20, 144.652, subd. 2; *supra* at 29–30. We have found such language to be a good indicator that the Legislature did not intend to create a private right of action without actually saying so. *See*

*Halva*, 953 N.W.2d at 504–05 (refusing to recognize a private right of action to enforce the Official Records Act, Minn. Stat. § 15.17 (2020), because the Legislature provided an alternative enforcement mechanism in Minn. Stat. § 13.08); *Becker*, 737 N.W.2d at 208 (refusing to recognize an implied private cause of action against mandatory reporters of child abuse or neglect who fail to report because the statute expressly provided for criminal but not civil liability); *see generally Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) (stating that "in view of . . . express provisions for enforcing the duties imposed by [the statute], it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action' "). More specifically, we have refused to find a private cause of action to enforce a statutory right when the statute gives enforcement authority to a state agency. *Graphic Commc'ns*, 850 N.W.2d at 691 (refusing to recognize an implied cause of action to enforce provisions of the Pharmacy Practices Act, Minn. Stat. § 151.21, subd. 4 (2012), when other provisions of the Act and relevant statutes provided the State Board of Pharmacy with broad enforcement authority).

As discussed above, the Minnesota Health Care Bill of Rights requires providers to create internal grievance procedures to address claims that a patient's rights were violated. Minn. Stat. § 144.651, subd. 20. The Legislature also placed in the Commissioner of Health oversight authority to ensure provider compliance with the Minnesota Health Care Bill of Rights including the power to issue correction orders and impose fines for substantial violations of those rights. Minn. Stat. §§ 144.652, subd. 2, 144.653, subds. 5, 6 (2022). Because we are chary of reading other remedies into a statute when a statute expressly provides a particular remedy, *Becker*, 737 N.W.2d at 207, we conclude that the

Patients do not have an implied private right to sue to enforce section 144.651, subdivision 16.

We are not convinced that the mere fact that the language of the Minnesota Health Care Bill of Rights is framed in terms of the rights owed to individual patients by providers instead of broad regulations on providers enacted for the protection of the public good changes our conclusion. We acknowledge that in *Cannon v. University of Chicago*, the United States Supreme Court noted that "the right- or duty-creating language of the statute" is one accurate indicator that the legislative body intended to create a cause of action. 441 U.S. 677, 690 n.13 (1979). But we have never adopted the interpretive principle that the stand-alone fact that a statute expressly identifies the class that the Legislature intended to benefit, or uses the term "right," means that the Legislature implicitly intended to create a private right of action to secure that right, especially where the Legislature created alternative ways to enforce the right.[19] Indeed, in *Graphic Communications*, we concluded that a statute that expressly provided protections to purchasers of prescription drugs did not

---

[19] The Patients urge us to apply the multi-factor test derived from the United States Supreme Court decision in *Cort v. Ash*, 422 U.S. 66, 78 (1975). We have never adopted the *Cort* test for determining whether the Legislature implicitly intended to create a private right of action and we decline to do so here. *Graphic Commc'ns*, 850 N.W.2d at 691 n.6; *see Becker*, 737 N.W.2d at 207 n.4 (declining to apply the *Cort* test when legislative intent was dispositive based on the text and structure of the statute). More generally, we are not in any way bound by the statutory interpretation principles and methodologies used by the United States Supreme Court when we interpret Minnesota statutes. Patients also assert, relying on *First Pacific Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1125 (9th Cir. 2000), that we should be more likely to imply a private right of action when the plaintiffs are seeking injunctive relief. Without citing any binding authority requiring us to do so, we decline to change our analysis based on the type of private action asserted.

34

have implicit legislative authorization to sue pharmacies for violations of those protections. 850 N.W.2d at 691.

For these reasons, we conclude that the Minnesota Health Care Bill of Rights does not a create a private right of action for patients claiming that a provider failed to furnish the patients with their records within 30 days after a request for those records in violation of Minn. Stat. § 144.651, subd. 16.

## CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part, and remand to the district court for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

CHUTICH, J., took no part in the consideration or decision of this case.

PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

ANDERSON, Justice (concurring in part, dissenting in part).

Because I would affirm the court of appeals on both issues, I concur in part and dissent in part.

In 2014, we held that the Minnesota Health Records Act did not create a private right of action for the under-disclosure of medical records. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293 (Minn. 2014). The Legislature adopted the Minnesota Health Records Act in 2007[1] and as we recognized in *Larson*, the Legislature provided specific causes of action for some violations but not others. 855 N.W.2d at 301–02. Today, the court explains that a different healthcare statute, the Minnesota Patients' Bill of Rights, similarly does not provide a private right of action to enforce a provision under the Minnesota Health Records Act as it relies on the State Commissioner of Health to enforce violations of the Act, not private causes of action. Minn. Stat. §§ 144.651–.652 (2022). I concur with that holding. Nonetheless, the court determines that Minn. Stat. § 8.31, subd. 3a (2022), known as the private attorney general statute, enacted in 1973, allows private individuals to sue healthcare providers to enforce the Minnesota Health Records Act. The court does so despite the clear and deliberate actions of the Legislature to provide specific mechanisms of enforcement for violations of the Minnesota Health Records Act and the Patients' Bill of Rights. The route taken by the court today is a departure from

---

[1]    *See* Act of May 25, 2007, ch. 147, art. 10, § 2, 2007 Minn. Laws 1804, 2098–2106 (codified as amended at Minn. Stat. §§ 144.291–.298 (2022)).

*Larson* and years of precedent narrowly interpreting the private attorney general statute, and from which I dissent.

A.

It is first important to examine the alleged right appellants seek to assert. Appellants rely on the Minnesota Health Records Act, Minn. Stat. §§ 144.291–.34 (2022). The scope of the Act states that "[p]atients have the rights specified in this section regarding the treatment the patient receives and the patient's health record." Minn. Stat. § 144.292, subd. 1. One of the listed rights provides that, subject to limited exceptions, "upon a patient's written request, a provider, at a reasonable cost to the patient, shall furnish to the patient within 30 calendar days of receiving a written request for medical records" either "copies of the patient's health record," or "the pertinent portion of the record relating to a condition specified by the patient." Minn. Stat. § 144.292, subd. 5. Appellants claim this provision permits appellants to sue respondents to require disclosure of the health records of appellants. But in analyzing the Minnesota Health Records Act, we previously determined that there is no private right of action to bring a civil lawsuit for failing to release medical records. *Larson*, 855 N.W.2d at 302.

In *Larson*, the beneficiary of a life insurance policy sued the healthcare provider's medical records contractor for failing to disclose all the insured's health records to the insurer. *Id.* at 296–97. In evaluating whether the records contractor could be held liable, we explained that the "Minnesota Health Records Act, Minn. Stat. §§ 144.291–.298 (2012), includes three mechanisms for enforcement." *Id.* at 301.

First, the Minnesota Health Records Act provides that "[a] violation of sections 144.291 to 144.298 may be grounds for disciplinary action against a provider by the appropriate licensing board or agency." Minn. Stat. § 144.298, subd. 1. Second, the Act provides for civil liability in certain situations where damages are "caused by an unauthorized release or an intentional, unauthorized access, plus costs and reasonable attorney fees." *Id.*, subd. 2. Third, the Act addresses liability concerning a record locator or patient information service. *Id.*, subd. 3. In analyzing the second enforcement mechanism, we determined "that a patient does not have a private right of action under Minn. Stat. § 144.298, subd. 2, when a person releases fewer medical records than authorized by a patient's consent." *Larson*, 855 N.W.2d at 295–96. We concluded that "under the plain meaning of the statute, liability arises only when a person or entity actually discloses a health record in violation of another provision of the Minnesota Health Records Act." *Id.* at 302.

Thus, we recognized that the Minnesota Health Records Act *expressly* creates a private right of action for certain conduct resulting in "an unauthorized release or an intentional, unauthorized access" under Minn. Stat. § 144.298, subd. 2 (2022). *Id.* The penalty section allows for disciplinary action against a provider and liability of the provider in specific circumstances:

> A person who does any of the following is liable to the patient for compensatory damages caused by an unauthorized release or an intentional, unauthorized access, plus costs and reasonable attorney fees:
>
> (1) negligently or intentionally requests or releases a health record in violation of sections 144.291 to 144.297;

> (2) forges a signature on a consent form or materially alters the consent form of another person without the person's consent;
>
> (3) obtains a consent form or the health records of another person under false pretenses; or
>
> (4) intentionally violates sections 144.291 to 144.297 by intentionally accessing a record locator or patient information service without authorization.

Minn. Stat. § 144.298, subd. 2.

Our review of the Minnesota Health Records Act in *Larson* showed that the Legislature expressly chose to provide a private civil cause of action for certain violations. 855 N.W.2d 293. This demonstrated that "the Legislature expressly creates civil liability when it intends to do so." *Becker v. Mayo Found.*, 737 N.W.2d 200, 208 (Minn. 2007). For " 'it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " *Id.* at 207 (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)). Although, the year after our decision in *Larson*, the Legislature modified parts of the Minnesota Health Records Act—including section 144.298—the Legislature did not create civil liability for failing to disclose health records. *See* Act of May 22, 2015, ch. 71, art. 8, § 22, 2015 Minn. Laws 856, 1121. Thus, the court's end-around way of creating a civil cause of action functionally does what the Legislature chose not to do. *See Engquist v. Loyas*, 803 N.W.2d 400, 406 (Minn. 2011) ("Because the Legislature has not acted, we assume that the Legislature has acquiesced in our interpretation.").

Appellants attempt to distinguish *Larson* by arguing that they seek declaratory and injunctive relief rather than compensatory damages and that here, the medical providers

failed to provide records to patients rather than insurance carriers. But these factual differences do not change our prior interpretation of the Minnesota Health Records Act and our determination that the Act provides specific mechanisms for enforcement and that excluded from those mechanisms is a private right of action for failing to release medical records. The basic outline of the claims presented in this appeal and those presented in *Larson* are the same: appellants seek to bring a private cause of action against healthcare providers for failing to disclose medical records. But even appellants acknowledge that "there is no dispute that Patients do not have a private right of action for compensatory damages under section 144.298, subdivision 2 [of the Minnesota Health Records Act]." Although appellants indirectly rely on the Minnesota Health Records Act through the Minnesota Patients' Bill of Rights and the private attorney general statute rather than the Minnesota Health Records Act itself, our previous examination of the Minnesota Health Records Act should inform us of whether that Act is intended to be enforced by the private attorney general statute.

B.

Having examined the right claimed by appellants to a private cause of action, I turn to the vehicle appellants chose to enforce the Minnesota Health Records Act—the private attorney general statute, Minn. Stat. § 8.31, subd. 3a.

Minnesota Statutes section 8.31 lists the "additional duties" of the Attorney General. Subdivision 3a, labeled "[p]rivate remedies," provides:

> In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements,

including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

Minn. Stat. § 8.31, subd. 3a. Thus, whether a person may step into the shoes of the Attorney General to enforce a particular law depends on the meaning of the phrase "the laws referred to in subdivision 1." *Id.* Minnesota Statutes section 8.31, subdivision 1 (2022), enumerates specific laws in addition to using more general language regarding the types of laws the Attorney General (or individuals on behalf of the Attorney General) may enforce.

Although the Minnesota Health Records Act is not one of the laws specifically enumerated in subdivision 1, appellants argue the Act need not be specifically enumerated because subdivision 1 provides a nonexclusive list of laws that may be privately enforced. *Id.* Respondents do not contest that "the laws referred to in subdivision 1" may include statutes not specifically listed in subdivision 1. *Id.*, subd. 3a. And, in *Morris v. American Family Mutual Insurance Co.*, we acknowledged that "the list of laws set out in subdivision 1 is not intended to be exclusive." 386 N.W.2d 233, 236 (Minn. 1986).

Subdivision 1 defines the scope of the Attorney General's enforcement authority as follows:

> The attorney general shall investigate violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade, and specifically, but not exclusively, the Nonprofit Corporation Act (sections 317A.001 to 317A.909), the Act Against Unfair Discrimination and Competition (sections 325D.01 to 325D.07), the Unlawful Trade Practices Act (sections 325D.09 to 325D.16), the Antitrust Act (sections 325D.49 to 325D.66), section 325F.67 and other laws against false or fraudulent advertising, the antidiscrimination acts contained in section 325D.67, the act against monopolization of food products (section 325D.68), the act regulating telephone advertising services (section

325E.39), the Prevention of Consumer Fraud Act (sections 325F.68 to 325F.70), and chapter 53A regulating currency exchanges and assist in the enforcement of those laws as in this section provided.

Minn. Stat. § 8.31, subd. 1.

Appellants argue that subdivision 1 covers the Minnesota Health Records Act because it is a law "respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn. Stat. § 8.31, subd. 1. In response, respondents argue that for the private attorney general statute to authorize private enforcement of a law not enumerated in subdivision 1, the law must encompass "those types of practices that are reflected in the prior descriptions in the list, that is, statutes that render conduct unlawful because such conduct is unfair, discriminatory, or—as the court of appeals explained—fraudulent."

We have addressed whether a statute not specifically enumerated under subdivision 1 can be privately enforced via the private attorney general statute only once. *Morris*, 386 N.W.2d 233. In *Morris*, we evaluated whether the Unfair Claims Practices Act (chapter 72A), an Act not specifically listed in subdivision 1, could be privately enforced under the private attorney general statute. *Morris*, 386 N.W.2d 233. We acknowledged that although "section 72A.20 is not listed in subdivision 1, that subdivision says its list is not exclusive, and, it is clear, section 72A.20 does deal with unfair business practices of insurers." *Morris*, 386 N.W.2d at 235–36. Despite the acknowledgement that the Act clearly dealt with unfair business practices, we stated that "it is uncertain whether Chapter 72A was ever contemplated by the legislature as subject to the private civil action provision of section 8.31, subd. 3a." *Morris*, 386 N.W.2d at 236. We then examined the

legislative history of both chapter 72A and the private attorney general statute, ultimately concluding that "there is lacking an explicit legislative intention to create a new cause of action in derogation of our common law," and thus "a private person does not have a cause of action for a violation of the Unfair Claims Practices Act." *Morris*, 386 N.W.2d at 238. We noted several factors that weighed against recognizing a private cause of action.

We explained that legislative history made "clear" that the private attorney general statute was originally intended to be inapplicable to chapter 72A. *Morris*, 386 N.W.2d at 236. Minnesota Statutes section 8.31 previously included subdivision 4 specifically excluding chapter 72A from the section. *Morris*, 386 N.W.2d at 236. Although the Legislature repealed subdivision 4, we determined it was "unclear" whether the repeal "intended to create a private cause of action." *Morris*, 386 N.W.2d at 236. Additionally, we noted that the same year the Legislature repealed subdivision 4, it added a provision to chapter 72A that, " 'No individual violation constitutes an unfair, discriminatory, or unlawful practice in business, commerce, or trade for purposes of section 8.31.' " *Morris*, 386 N.W.2d at 236 (quoting Minn. Stat. § 72A.20, subd. 12(a) (1984)). We concluded that "the legislature's intent to create a private cause of action [was] at best delphic." *Morris*, 386 N.W.2d at 236. We then examined whether a cause of action could be implied and began by examining the "consequences of doing so." *Id.*

In examining the consequences of implying a private cause of action, we noted that "Chapter 72A's comprehensive scheme of administrative enforcement would seem more appropriate to investigating and regulating an insurer's general business practices." *Id.* at 237. Lastly, we explained that "a private cause of action would result in significant changes

in our common law." *Id.* Ultimately, we concluded that "there is lacking an explicit legislative intention to create a new cause of action in derogation of our common law" and a private person therefore does not have a cause of action for a violation of chapter 72A. *Id.* at 238.

After *Morris*, we analyzed the private attorney general statute again when evaluating a claim based on a statute specifically listed in subdivision 1. *Church of Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1 (Minn. 1992). In *Church of Nativity*, we allowed the recovery of attorney fees under the private attorney general statute because a party violated the Consumer Fraud Act by making a false promise. *Id.* at 8. The concurrence and dissent disagreed, concluding that "the legislative intent" of the private attorney general statute and Consumer Fraud Act "is directed at deceptive practices to which the consumer public is prey, and that the legislature did not intend thereby to cover ad hoc deceptions arising in private disputes." *Id.* at 10 (Simonett, J., concurring in part, dissenting in part). Eight years later, we adopted Justice Simonett's reasoning in *Church of Nativity* and held that the private attorney general statute "applies only to those claimants who demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).

In *Ly*, we reasoned "that the sweep of the statute can be no broader than the source of its authority–that of the attorney general–whose duties are to protect *public* rights in the interest of the state." *Id.* at 313. We analyzed the legislative history of the private attorney general statute and determined that it "advances the legislature's intent to prevent fraudulent representations and deceptive practices with regard to consumer products by

offering an incentive for defrauded consumers to bring claims in lieu of the attorney general." *Id.* at 311. We explained that the private attorney general statute "provides a reward to private parties for uncovering and bringing to a halt unfair, deceptive and fraudulent business practices, functions that, to that point, had been the responsibility of the attorney general." *Id.* at 313. The legislative history in *Ly* noted statements from legislators primarily concerned with fraud. *Id.* at 311 (quoting legislators that described the alleged mischief as "consumer fraud," "unscrupulous . . . businessman who makes . . . false and deceptive ads," and "fraudulent business practices").

In 2012, we reaffirmed the public-benefit requirement and explained that construing the private attorney general statute to have a public-benefit requirement "guides us in resolving disputes over the meaning of the statute." *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 900 (Minn. 2012). We also noted that "[t]he rights of a private litigant under subdivision 3a are not as broad as those of the State AG." *Id.* at 899.

Our previous interpretations of the private attorney general statute control the outcome of this dispute. The private attorney general statute is unique given that it allows private individuals to step into the shoes of the Attorney General in certain circumstances. *See William B. Rubenstein, On What a "Private Attorney General" Is—And Why it Matters*, 57 Vanderbilt L. Rev. 2129, 2133 ("*Private attorney general* is an awkward expression, qualifying the public lawyer, *the attorney general*, with the contradictory appellation, *private*.").[2]

---

[2]    As the court notes, other language in the statute uses the same phrase, "laws referred to in subdivision 1" when discussing the Attorney General's power. *See* Minn. Stat.

As we required in *Morris*, when considering non-enumerated statutes, some affirmative indication of legislative intent is required before permitting the statute to be enforced under the private attorney general statute. *See Morris*, 386 N.W.2d at 236 (noting that "while the list of laws set out in subdivision 1 is not intended to be exclusive, it is uncertain whether Chapter 72A was ever contemplated by the legislature as subject to the private civil action provision of section 8.31, subd. 3a"); *see also Dennis Simmons, D.D.S., P.A. v. Mod. Aero, Inc.*, 603 N.W.2d 336, 340 (Minn. App. 1999) (rejecting litigation under the Minnesota Uniform Deceptive Trade Practices Act under the private attorney general

§§ 8.31, subds. 2 (explaining the Attorney General's ability to investigate and punish), 2b (ability to accept assurance of discontinuance), 3 (ability to sue for injunctive relief), 3b (explaining that any permanent injunction, order, or judgment is prima facie evidence of violating those laws). The Attorney General notes in his amicus brief that a problem arises if the court determines that subdivision 3a means all the laws the Attorney General may enforce under subdivision 1, but then limits the types of suits a private citizen may bring, because the court would be interpreting the meaning of the statute differently based on who is bringing the lawsuit. The court relies on these other uses in the statute of this phrase as evidence that the language must be interpreted the same throughout the statute. Not so. The power of the Attorney General is not at issue in this appeal, and given that we have stated that the Attorney General has *broad* enforcement powers under the *common law* in addition to statutory powers, the Attorney General's powers may yet be broader than private individuals regardless of how the court interprets subdivision 1 here. *Dunn v. Schmid*, 60 N.W.2d 14, 17 n.8 (Minn. 1953) (noting that the Attorney General has "extensive common-law powers which are inherent in his office"); *cf. State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 134 (Minn. 2019) (explaining section 8.31, subdivision 3, "broadly authorizes the Attorney General to seek equitable relief to stop conduct that harms consumers"). Private individuals, although acting in lieu of the Attorney General under the private attorney general statute, are not the Attorney General; these claimants do not hold the elected office of the Attorney General, an office established by the Minnesota Constitution. Minn. Const. art. V, § 1. And we have previously recognized the distinction between a private litigant and the Attorney General in evaluating claims brought under section 8.31. *See Curtis*, 813 N.W.2d at 899–900 (concluding that "the rights of the State AG to bring a specific lawsuit are superior to the right of a private litigant to bring the same lawsuit").

statute because it was "not included in" the list of laws in subdivision 1). Thus, *Morris* directs us to determine whether there is any indication that the Legislature contemplated that the Minnesota Health Records Act is subject to the private attorney general statute. Appellants and the court distinguish *Morris* based on factors unique to the statute at issue in *Morris*. Although *Morris* involved a different statute, the principle remains the same—the court recognized an affirmative indication was required that the Legislature intended the private attorney general statute to cover the act in question. Moreover, the factors unique in *Morris* included consideration of whether the asserted act accounted for administrative enforcement and effects on the common law—and both factors are present in analyzing the intersection of the Minnesota Health Records Act and the private attorney general statute.

First, the Minnesota Health Records Act provides for administrative enforcement. *See* Minn. Stat. § 144.298, subd. 1 ("A violation of [any section of the MHRA] may be grounds for disciplinary action against a provider by the appropriate licensing board or agency."); *Larson*, 855 N.W.2d 293 (recognizing the Act provides for administrative enforcement). Second, there is also an effect on the common law. The private attorney general statute is unique in that it allows for attorney fees. "Under Minnesota's common law, attorney fees are not allowed in ordinary civil actions. Rather, attorney fees are allowed only when permitted by a specific contract or when authorized by statute." *Roach v. County of Becker*, 962 N.W.2d 313, 322–23 (Minn. 2021) (citation omitted). The private attorney general statute implicates the historic rule in Minnesota that civil litigants pay their own attorney fees, and we have rejected broad interpretations of the private attorney

general statute in part "because to do so would substantially alter a fundamental principle of law deeply ingrained in our common law jurisprudence–that each party bears his own attorney fees in the absence of a statutory or contractual exception." *Ly*, 615 N.W.2d at 314. In *Morris*, we narrowly construed the private attorney general statute by ensuring the Legislature's intent to enforce an act. 386 N.W.2d 233.

It has been 50 years since the Legislature enacted the private attorney general statute, and 40 years since our decision in *Morris*; subsequent to those decisions, the Legislature has taken no action to reject our narrow interpretation of the private attorney general statute. "Once we have interpreted a statute, that prior interpretation guides us in reviewing subsequent disputes over the meaning of the statute." *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 174 (Minn. 2021) (citation omitted) (internal quotation marks omitted). If the Legislature leaves our judicial interpretation undisturbed, the interpretation "becomes part of the terms of the statute itself." *Wynkoop v. Carpenter*, 574 N.W.2d 422, 426 (Minn. 1998). This is so because "[w]e are extremely reluctant to overrule our precedent absent 'a compelling reason.'" *Schuette v. City of Hutchinson*, 843 N.W.2d 233, 238 (Minn. 2014) (quoting *State v. Martin*, 773 N.W.2d 89, 98 (Minn. 2009)). And "stare decisis has special force in the area of statutory interpretation because the Legislature is free to alter what we have done." *Id.*

We are thus guided by our prior interpretations and the principles that contextualize the broad language used by the Legislature in the private attorney general statute. Relevant here, *Morris* directs us to examine the act sought to be enforced in search of legislative intent to allow the private enforcement of a law under the private attorney general statute,

and our public-benefit requirement reminds us of the unique construction of the private attorney general statute.

## C.

With these principles in mind, I turn to whether the Minnesota Health Records Act is covered by the private attorney general statute.

Here, appellants cannot point to any affirmative indication of legislative intent that demonstrates that the Legislature intended that the Minnesota Health Records Act may be enforced by the private attorney general statute. In contrast, the Legislature has expressly provided for enforcement by the private attorney general statute in other laws. *Cf.* Minn. Stat. §§ 82B.24, subd. 2 (2022) ("Private attorney general statute. A person injured by a violation of the standards, duties, prohibitions, or requirements of section 82B.20 or 82B.22 also may bring an action under section 8.31. A private right of action by a borrower under this chapter is in the public interest."), 58.18, subd. 2 (2022) ("Private attorney general statute. A borrower injured by a violation of the standards, duties, prohibitions, or requirements of sections 58.13, 58.136, 58.137, 58.16, and 58.161 also may bring an action under section 8.31. A private right of action by a borrower under this chapter is in the public interest."), 332B.13, subd. 1 (2022) ("Violation as deceptive practice. A violation of any of the provisions of this chapter is considered an unfair or deceptive trade practice under section 8.31, subdivision 1. A private right of action under section 8.31 by an aggrieved debtor is in the public interest.").

We determined in *Larson* that the Legislature chose specific enforcement mechanisms for the Minnesota Health Records Act. Interpreting the broad language of the private attorney general statute to allow enforcement of the Minnesota Health Records Act renders irrelevant the Legislature's detailed choices of which types of violations under the Act provide a private right of action. Although the common law may not be implicated in relation to the topic of health records, it is undisputed that the common law rule placing the burden of paying attorney fees on the party incurring those fees is eviscerated by the court's opinion in this dispute by expanding recovery here under the private attorney general statute. "We decline to construe legislative intent to abrogate the common law with regard to [an] attorney fees provision in the absence of a clear purpose to do so." *Ly*, 615 N.W.2d at 314; *see Roach*, 962 N.W.2d at 324 (declining to adopt the broad interpretation of a statute allowing attorney fees "in *any* civil action with *any* connection to a watershed district rule").

Thus, I dissent because appellants fail to show that the Legislature intended the Minnesota Health Records Act to be enforced by the private attorney general statute.[3]

---

[3]    Because our precedent controls here, we need not reach a plain-language analysis. I concede that the court offers one reasonable interpretation of Minn. Stat. § 8.31, subd. 1. But, from a plain language analysis standpoint, respondents also offer a reasonable interpretation by arguing that "other unlawful practices" is cabined by the preceding words "unfair" and "discriminatory" and must be interpreted in light of the immediately following specific laws. *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 689 (Minn. 2014) (explaining that "we read the statute as a whole and give effect to all of its provisions"); *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (Scalia, J.) ("Statutory construction, however, is a holistic endeavor."). I agree with respondents that the disputed language in subdivision 1 is not unqualified because the more specific terms "unfair" and "discriminatory" inform the meaning of the more general term "other unlawful practices."

Moving forward, it is hard to imagine a violation of law regulating a corporation that does not fall within the broad language of the private attorney general statute as interpreted by the court. As a result of this far-reaching interpretation, parties will no longer argue whether a private right of action is explicit or implied. Instead, parties will simply argue their claims are valid under the private attorney general statute by repackaging individual claims as widespread systematic violations that affect the public. And, like here, when a case is dismissed under Minn. R. Civ. P. 12.02(e) for failure to state a claim for which relief can be granted, we assume the facts alleged in the plaintiff's complaint are true and construe all reasonable inferences in favor of the nonmoving party. *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 692 (Minn. 2014). And that, unintentionally perhaps but nevertheless, changes the litigation calculus; defendants facing dubious claims may well settle those claims to avoid the potentially onerous burden of substantial attorney fees. More broadly, the interpretation adopted by the court exposes businesses throughout the State to litigation for almost any regulatory violation, alters the long-standing American rule regarding attorney fees, and upends our typical analysis used to determine whether private rights of action exist. The court here undercuts, if not outright reverses, our prior precedent in

---

Rather, "unfair," "discriminatory," and "other unlawful practices" are connected, and these types of practices are related to the specific statutes listed immediately after this general phrase. A regulatory violation of a law pertaining to health records is unlike the "unfair, discriminatory, or other unlawful practices in business" the Legislature intended to cover. *See Webster's Third New International Dictionary* 2494 (2002) (defining "unfair" as "marked by injustice, partiality, or deception"); *Unfair*, *Black's Law Dictionary* (11th ed. 2019) (defining "unfair" as "[n]ot honest, impartial, or candid; unjust," and "[i]nequitable in business dealings").

*Morris* and *Larson* by failing to examine the context of the private attorney general statute and the Minnesota Health Records Act.  Because I would conclude appellants may not sue under the private attorney general statute to enforce the Minnesota Health Records Act, I respectfully dissent from that part of the court's opinion.